1

THE HONORABLE JAMES L. ROBART

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

MAEVE INVESTMENT COMPANY
LIMITED PARTNERSHIP, individually and on
behalf of all others similarly situated,

No. 2:16-cv-01908-JLR

AMENDED CLASS ACTION
COMPLAINT

11

12

Plaintiffs,

13

v.

14

TEEKAY CORP., PETER EVENSEN, and
VINCENT LOK,

15

Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED CLASS ACTION COMPLAINT
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1

1

**TABLE OF CONTENTS**

2
<u>Page</u>

3   I.     SUMMARY OF THE ALLEGATIONS ...................................................................1

4   II.    JURISDICTION AND VENUE ...........................................................................5

5   III.   PARTIES .............................................................................................................5

6          A.    Lead Plaintiff Maeve.................................................................................5

7          B.    Corporate Defendant Teekay ....................................................................5

8          C.    Individual Defendants ..............................................................................6

9          D.    Relevant Non-Parties................................................................................8

10               1.    Teekay LNG Partners LP ................................................................8

11               2.    Teekay Offshore Partners LP ..........................................................8

12  IV.    SUBSTANTIVE ALLEGATIONS ...................................................................10

13         A.    MLPs Generally......................................................................................10

14               1.    Structure..........................................................................................10

15               2.    Energy MLP Market Segments: "Upstream," "Midstream," and "Downstream"........................................................................11

16               3.    MLP Economic Structure ...............................................................12

17               4.    MLP Incentive Distribution Rights.................................................13

18               5.    The Prototypical MLP Investor ......................................................14

19               6.    MLPs' Mechanisms For Funding Growth .......................................15

20         B.    Teekay's Business....................................................................................17

21               1.    General Background ........................................................................17

22               2.    Teekay's Growth Projects and Means of Financing Them...............18

23         C.    The Energy Industry Economic Downturn ...............................................20

24         D.    Defendants' Fraudulent Scheme...............................................................21

25               1.    Prior to the Beginning of the Class Period, Defendants Announce an Increased Dividend .................................................21

26
27               2.    The Beginning Of The Class Period:  Teekay's February 2015 Earnings Call.............................................................................25

28

AMENDED CLASS ACTION COMPLAINT - i
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

3.     On June 30, 2015, Teekay Increases Its Dividend by 75% ....................27

4.     Defendants Again Reassure Investors That Teekay's Dividend Will Not Be Impacted by the Energy Industry's Economic Decline ........................................................................................28

5.     The November 2015 Statements ..................................................31

E.     The Truth Is Revealed ....................................................................32

F.     Defendants' False and Misleading Class Period Statements .................35

1.     February 19, 2015 Earnings Call ................................................36

2.     June 30, 2015 Press Release ......................................................38

3.     August 6, 2015 Earnings Results ................................................39

4.     August 6, 2015 Press Release ....................................................40

5.     August 7, 2015 Earnings Call and Presentation..........................42

6.     November 6, 2015 Earnings Call and Earnings Presentation ...................44

7.     RBC MLP Conference November 18, 2015 ...............................47

G.     Scienter Allegations .......................................................................48

V.    LOSS CAUSATION.......................................................................................51

VI.    LEAD PLAINTIFF AND THE CLASS ARE ENTITLED TO A PRESUMPTION OF RELIANCE ..........................................................54

VII.    THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE ARE INAPPLICABLE..........................................................56

VIII.    CLASS ACTION ALLEGATIONS ...............................................................58

IX.    CAUSES OF ACTION ....................................................................................60

COUNT I   VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS ...........................................................................................60

COUNT II   VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT AGAINST THE INDIVIDUAL DEFENDANTS ..........................................63

PRAYER FOR RELIEF .............................................................................................65

JURY TRIAL DEMANDED .......................................................................................66



1        Lead Plaintiff, Maeve Investment Company Limited Partnership ("Maeve" or

2   "Plaintiff"), by its undersigned counsel, respectfully submits this Amended Complaint

3   ("Complaint") alleging violations of the federal securities laws on behalf of itself and all other

4   similarly situated persons or entities who purchased or otherwise acquired Teekay Corporation

5   ("Teekay" or "the Company") common stock between February 19, 2015, and December 16,

6   2015, inclusive (the "Class Period"), and who were damaged thereby (the "Class").

7        Plaintiff brings this class action to recover damages proximately caused to itself and the

8   Class by Defendants' (defined below) violations of Sections 10(b) and 20(a) of the Securities

9   Exchange Act of 1934 ("Exchange Act"), and United States Securities and Exchange

10  Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against: (i)

11  corporate defendant Teekay, (ii) its Chief Executive Officer ("CEO"), President, and Director,

12  Peter Evensen ("Evensen"), and (iii) its Chief Financial Officer ("CFO") and Executive Vice

13  President, Vincent Lok ("Lok") (collectively, "Defendants").

14       This Complaint is based upon Plaintiff's personal knowledge with respect to Plaintiff's

15  own acts, and upon information and belief as to all other matters based on the investigation

16  undertaken by Lead Counsel,[1] which included, *inter alia*, the review and analysis of:  (1)

17  regulatory filings by Teekay with the SEC; (2) Teekay's press releases and other public

18  statements; (3) securities analyst reports; (4) media reports concerning Teekay, its subsidiary

19  entities, competitors, and the mid-stream Master Limited Partnership ("MLP", defined below)

20  industry, including online news sources; and (5) other publicly available information concerning

21  Teekay and its subsidiary entities (defined below).  Plaintiff believes that substantial evidentiary

22  support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### I.      SUMMARY OF THE ALLEGATIONS

24       1.     This securities class action case arises from Defendants' false and misleading

25  statements made during the Class Period regarding the ability of Teekay's subordinate daughter

---

27     [1] The United States District Court for the District of Connecticut appointed Kessler Topaz Meltzer & Check, LLP as Class Counsel. *See* ECF No. 28.



companies—TK Offshore Partners LP ("TOO"), TK LNG Partners LP ("TGP"), and TK Tankers, Ltd. ("TNK")—to obtain sufficient financing to fund their existing and known committed growth projects from external sources, which Defendants told investors supported Teekay's ability to increase its dividend by 75% and to further increase the dividend by 15-20% each year for the following three years.  As became clear in December 2015, these statements made from at least February 2015 through the end of the Class Period were entirely false and misleading.

2.       As discussed in more detail below, Teekay is one of the world's largest marine energy transportation, storage, and production companies, with over $12 billion in assets. In September 2014, Teekay informed investors of its intent to substantially increase its dividend by 75% once it transferred ownership of its $1.26 billion *Petrojarl Knarr* Floating Production, Storage and Offloading ("FPSO") unit to TOO.  Defendants explained that Teekay was able to increase its dividend because it would "distribute to its shareholders a majority of the cash flows it receives from ownership in its publicly-traded subsidiaries," mainly, TGP and TOO.  Thus, Teekay's ability to boost its dividend was "primarily based on the cash flow contributions" TGP and TOO were making and would continue to make to Teekay from the revenue streams produced by their existing facilities and known committed growth projects.

3.       Defendants further assured investors that the Company *already had* enough committed growth projects to achieve the increased dividend and to further increase it for the next three years.  Thus, they told investors that "the 20% growth rate is not only achievable, but in fact there may be further upside potential given the strong industry fundamentals."  To further support their story, Defendants told investors that TGP and TOO *already had* "the financial capacity to support their own growth" by using external sources of financing.  Defendants even provided specific dollar figures of TGP's and TOO's then-present "combined investment



capacity of $2.5 billion per annum," which Defendants categorized as "more than sufficient" to externally finance TGP's and TOO's "*existing* backlog of projects."

4.      During Teekay's earnings call with investors on February 19, 2015, Defendants reiterated Teekay's intent to increase its dividend by "75% to 80%" based on its "*existing* project backlog" of "approximately $7 billion of *known* growth projects" at TGP and TOO.

5.      Four months later, on June 30, 2015, Defendants announced that the transfer of the *Petrojarl Knarr* was complete and, as promised, Teekay was increasing its dividend 75% to $0.55 per share from $0.31625 per share.  Once again, Defendants explained to investors that Teekay was able to increase its dividend because it was distributing a majority of the revenue streams it received from TGP and TOO, which Teekay then passed through to its shareholders in the form of its increased dividends.

6.      By mid-2015, however, the crude oil market was nearly a year deep in a sharp economic downturn, causing mounting concern amongst investors as to whether this industry-wide market decline would have a negative impact on Teekay's business.  Defendants, however, made clear that the crude oil market problems would not affect Teekay's business or financial condition, and instead assured investors: "**Despite the current volatility in the energy markets**, the long-term fundamentals for both [TGP's and TOO's] markets remain attractive."

7.      Defendants continued to tout the 75% increase in Teekay's dividend and the further 15-20% annual dividend increase over the next three years.  Defendants reassured investors that Teekay's dividend would continue to increase "despite the current volatility in the energy markets" because TGP and TOO had "no direct commodity price exposure."  Defendants further distracted investors from the ailing energy industry by trumpeting the purported "strong pipeline of *contracted* growth projects directly at [TGP and TOO]" as well as their then-present

AMENDED CLASS ACTION COMPLAINT - 3
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  ability to obtain sufficient external sources of financing such as "access to competitive bank

2  financing and multiple capital markets."

3         8.     Through November 2015, Defendants continued to tout the June dividend

4  increase and reassured investors that the 15-20% additional annual dividend increases would

5  occur over the next three years due to TGP's and TOO's "continue[d] … access to competitive

6  bank financing and multiple capital markets."  Even when analysts specifically questioned

7  whether TGP's and TOO's growth projects were speculative or would definitely support the 15-

8  20% dividend growth, Defendants responded, "we *already have* enough growth in the book for

9  the next three years, 2016, 2017 and 2018. We have growth all the way out to 2020, **so that is**

10  **why we can have that target**."

11         9.     Only a few weeks later, however, on December 16, 2015, the Teekay Defendants

12  stunned investors by abruptly announcing that Teekay would be ***slashing its dividend by 90%—***

13  ***from $0.55 to $0.055 per share*** ($2.75 annually to $0.22 annually).  Despite their repeated

14  assurances that TGP and TOO had sufficient financing from external sources to fund their

15  committed growth projects, Defendants revealed the truth that Teekay's daughter companies did

16  not have the ability to externally finance their known growth projects.  Instead, Teekay revealed

17  that TGP and TOO would need to "use a significant portion of their internally generated cash

18  flow to fund the equity capital requirements of their future profitable growth projects and reduce

19  debt levels."

20        10.    With Teekay's announcement that TGP and TOO would be retaining the majority

21  of their revenue streams to themselves for the foreseeable future and consequently cutting off

22  Teekay's cash flow, Teekay's stock price dropped 58% and wiped out hundreds of millions of

23  dollars of investors' equity.  This case was brought to recover the shareholders' losses due to the

24  Teekay Defendants' fraudulent conduct.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

## II.    JURISDICTION AND VENUE

11.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12.    This action was transferred to this District from the District of Connecticut.  *See* ECF No. 59.  Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and Section 27(c) of the Exchange Act (15 U.S.C. §78aa(c)).  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    PARTIES

### A.    Lead Plaintiff Maeve

13.    On November 7, 2016, the District of Connecticut appointed Plaintiff Maeve to serve as Lead Plaintiff in this action pursuant to the Private Securities Reform Act of 1995 ("PSLRA").  *See* ECF No. 57.

14.    Plaintiff, Maeve Investment Company Limited Partnership ("Maeve"), is a family investment vehicle formed by Joseph O'Toole.  Maeve is a limited partnership formed under Nevada law, and it is headquartered in Lecanto, Florida.  Plaintiff purchased Teekay common stock during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.  *See* ECF Nos. 30-1 and 30-2 (incorporated herein by reference).

### B.    Corporate Defendant Teekay

15.    Teekay is incorporated in the Republic of the Marshall Islands and maintains its principal operating office at 550 Burrard Street, Vancouver, British Columbia, Canada, and its

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TK."

16.     Teekay operates in the marine midstream space (defined below) in the markets of international crude oil and liquefied natural gas marine transportation.  Teekay also offers offshore oil production, storage, and offloading services.

17.     Teekay has general and limited partnership interests in two publicly-listed partnerships, Teekay Offshore Partners L.P. ("TOO") and Teekay LNG Partners L.P. ("TGP"). In addition, Teekay has a controlling interest in publicly-listed Teekay Tankers Ltd. ("Teekay Tankers").  Teekay also has a fleet of directly-owned vessels.  Because of its controlling interest in TOO and TGP, Teekay reports the financial results of itself as well as that of TOO and TGP on a consolidated basis.

18.     As of June 30, 2015, Teekay reported that the combined Teekay entities manage and operate consolidated assets of approximately $12.5 billion, comprised of over 220 liquefied gas, offshore, and conventional tanker assets.

C.     **Individual Defendants**

19.     Defendant Peter Evensen ("Evensen") joined Teekay in 2003 as Senior Vice President, Treasurer, and Chief Financial Officer.  He was appointed Executive Vice President and Chief Financial Officer in 2004, and was appointed Executive Vice President and Chief Strategy Officer in 2006.  In April 2011, he became a Teekay Director, as well as President and Chief Executive Officer, positions he held through the end of the Class Period.[2]

20.     Evensen served as Chief Executive Officer and Chief Financial Officer of Teekay GP L.L.C. since its formation in November 2004, and as a Director beginning in January 2005,

---

[2] On October 27, 2016, Teekay announced that Evensen will retire at the end of January 2017.

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

and held these positions through the end of the Class Period. Teekay GP L.L.C. is the general partner of TGP, and, in this role, Teekay GP L.L.C. manages TGP's day-to-day affairs and oversees its business and operations.

21. Evensen served as Chief Executive Officer, Chief Financial Officer, and Director of Teekay Offshore GP L.L.C. beginning in August 2006 and held these positions through the end of the Class Period. Teekay Offshore GP L.L.C. is the general partner of TOO, and in this capacity manages the business and operations of TOO.

22. Evensen also previously served as Director of Teekay Tankers Ltd. from October 2007 until June 2013, was later reappointed on June 10, 2015, and held that position through the end of the Class Period.

23. Defendant Vincent Lok ("Lok") was appointed as Teekay's Executive Vice President and Chief Financial Officer in 2007, and held that position through the end of the Class Period. Lok served as Controller of Teekay from 1997 until he was appointed Vice President, Finance in 2002, Senior Vice President and Treasurer in 2004, and Senior Vice President and Chief Financial Officer in 2007.

24. In June 2015, Lok was appointed Director of Teekay GP L.L.C, and held that position through the end of the Class Period. Teekay GP L.L.C. is the general partner of TGP, and, in this role, Teekay GP L.L.C. manages TGP's day-to-day affairs and oversees its business and operations.

25. Lok also has served as the Chief Financial Officer of Teekay Tankers Ltd. since 2007, and held that position through the end of the Class Period.

26. Defendants Teekay, Evensen, and Lok are collectively referred to herein as the "Defendants." Defendants Evensen and Lok are collectively referred to herein as the "Individual Defendants."



**D.      Relevant Non-Parties**

     **1.      Teekay LNG Partners LP**

     27.      Teekay LNG Partners L.P. ("TGP"), based in Hamilton, Bermuda, and founded in 2004, is one of the two MLPs of which Teekay was a general partner during the Class Period. TGP provides marine transportation services for liquefied natural gas ("LNG"), liquefied petroleum gas ("LPG"), and crude oil worldwide.  The company operates through two segments, Liquefied Gas and Conventional Tanker.  Within these segments, TGP transports (1) liquid petroleum gases, including propane, butane, and ethane; (2) petrochemical gases, such as ethylene, propylene, and butadiene; and (3) ammonia.  As of December 31, 2015, TGP's assets consisted of a fleet of 59 owned or chartered-in vessels and 28 newbuilding/conversions on order.

     28.      Teekay GP L.L.C. is the general partner of TGP and thus the directors of Teekay GP L.L.C. oversee TGP's business and operations.  Accordingly, throughout the Class Period, "the day-to-day affairs" of TGP were managed by the officers of Teekay GP L.L.C., including its CEO, CFO, and Director, Evensen, and Director, Lok.

     29.      Throughout the Class Period, TGP made quarterly cash distributions to its limited partners and to its General Partner, Teekay, which Teekay then used to pay dividends to its investors.

     **2.      Teekay Offshore Partners LP**

     30.      Teekay Offshore Partners L.P. ("TOO"), also headquartered in Hamilton, Bermuda, and founded in 2006, is the second of two MLPs of which Teekay was a General Partner during the Class Period.  TOO provides marine transportation, oil production, storage, long-distance towing, offshore installation and maintenance, and safety services to its customers in the offshore oil industry in the North Sea and Brazil.  TOO operates within the following six industry segments:



- **Shuttle Tankers**:  A shuttle tanker is a vessel designed for oil transport from an off-shore oil field that is equipped with off-loading equipment compatible with the oil field to be serviced.  Shuttle tankers are often used as an alternative to pipelines in harsh climates, remote locations, or deepwater.

- **Floating Production, Storage and Offloading ("FPSO")**:  An FPSO is a floating vessel located near an oil platform, where oil is processed and stored until it can be transferred to a tanker for transporting. FPSOs can be converted former supertankers or can be purpose-built.

- **Floating Storage and Offloading ("FSO")**:  An FSO is essentially a simplified FPSO, without the capability for oil or gas processing. Most FSOs are converted single hull supertankers.

- **Conventional Tankers**:  These consist of ordinary tankers for the transportation of petroleum products**.**

- **Towage**:  These consist of units that are multifunctional vessels to provide assistance in towing, mooring, installation, and decommissioning situations of ultra-large and ultra-heavy floating objects.

- **Units for Maintenance and Safety ("UMS")**:  UMSs are vessels that operate offshore to carry out maintenance campaigns that have facilities to house workers and equipment.

31.     As of December 31, 2015, TOO's assets consisted of 33 shuttle tankers (including 3 chartered-in vessels and 1 hiload dynamic positioning unit); 6 FPSO units; 7 FSO units; 6 long-distance towing and offshore installation vessels; 1 UMS; and 2 conventional oil tankers.

32.     Teekay Offshore GP L.L.C. is the general partner of TOO and thus the directors of Teekay Offshore GP L.L.C. oversee TOO's business and operations.  Accordingly, throughout

AMENDED CLASS ACTION COMPLAINT - 9
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  the Class Period, "the day-to-day affairs" of TOO were managed by the officers of Teekay

2  Offshore GP L.L.C., including its CEO, CFO, and Director, Evensen.

3        33.      Throughout the Class Period, TOO made quarterly cash distributions to its limited

4  partners and to its General Partner, Teekay, which Teekay then used to pay dividends to its

5  investors.

6

7                        **IV.       SUBSTANTIVE ALLEGATIONS**

8  **A.      MLPs GENERALLY**

9        **1.      Structure**

10       34.      MLPs are partnerships that trade on public exchanges or markets (e.g., NYSE).

11 MLPs exist to allow for funds to be distributed through the payment of dividends to the LP

12 unitholders and the GP in a tax-efficient manner.  Thus, they are structured as pass-through

13 partnerships, rather than public corporations, and trade in the form of units (akin to the common

14 stock of C-corporations).  MLPs pay no corporate-level taxes, which are instead borne by

15 unitholders/IDR recipients at their individual tax rate.

16       35.      MLPs typically are measured largely by the stability and predictability of their

17 cash flow. As a tax pass-through entity, the amount of that cash flow is enhanced because the

18 MLP itself does not pay any federal income taxes. Among other things, this tax savings

19 contributes to the cost of capital advantage enjoyed by MLPs over similarly situated

20 corporations.

21       36.      Ordinarily, a publicly traded MLP consists of a decision-making general partner

22 ("GP") and limited partnership ("LP") interests (units) traded on a public exchange and could

23 include a sponsor:

24

25

26

27

28

AMENDED CLASS ACTION COMPLAINT - 10
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1



1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

- The GP usually holds a minor equity stake (typically about 2%), but has full management responsibility of the business and owns the incentive distribution rights ("IDRs", discussed in more detail below).

- The LPs have a passive interest in the partnership, have no role in daily operations, provide all the capital, receive cash distributions, and have limited or no voting rights.

37.     MLPs pay out the bulk of the cash they generate through operations as cash distributions to LP and GP unitholders.  The GP controls the operations and typically owns an equity interest along with incentive distribution rights ("IDRs").  A "pure-play" GP typically owns only a relatively small interest in the MLP as well as IDRs; however, a GP is not prohibited from owning and operating assets or owning additional LP interests.  The two-tier structure is the reason many companies that generate qualifying income prefer the MLP structure.  Both the GP and the LP can raise capital for projects, allowing for greater flexibility in financing.

   **2.     Energy MLP Market Segments:  "Upstream," "Midstream," and "Downstream"**

38.     MLPs that operate in the energy business can generally be placed into one of three market segments: upstream, midstream, and downstream.

39.     Upstream MLPs are primarily involved in the exploration, recovery, development and production of crude oil, natural gas, and natural gas liquids.  In practical terms, Upstream MLPs are the companies that search for, locate, and extract natural resources from the earth, then work to refine them into finished or near-finished goods.

40.     Midstream MLPs represent the next step in the energy industry hierarchy following Upstream MLPs.  They are primarily involved in the gathering, storage, and transportation of oils and gases extracted and refined by Upstream MLPs.  For instance,



companies that maintain oil and gas pipelines are Midstream MLPs because they transport finished oil and gas products supplied by the Upstream MLPs that extract them. Because Midstream MLPs, such as Teekay, earn their revenue based upon the storage and transportation of energy products, their valuations tend not to be directly correlated to volatility in the price of the underlying products themselves or the unpredictability of the exploration and development process overall (e.g., shortages or surpluses of the underlying energy commodity) as are Upstream MLPs. The majority of energy industry MLPs, including Teekay's daughter MLPs (in which Teekay owns between 2 and 10% of the LP shares), participate in the Midstream sector.

41. "Downstream" MLPs make up the final stage of the energy industry hierarchy and commonly consists of companies engaged in the business of refining petroleum crude oil and the purification of raw natural gas. Downstream MLPs market and distribute finished oil and gas products to retailers and consumers. The most common products are gasoline, kerosene, jet fuel, diesel oil, heating oil, fuel oils, lubricants, waxes, asphalt, natural gas, and LPG.

### 3. MLP Economic Structure

42. The economic structure of an MLP is unique relative to other publicly traded entities because the entire economic structure of an MLP revolves around cash flow. Indeed, MLPs are typically traded based on a multiple of cash flow—not net income. As such, an MLP is required (and incentivized) to distribute all of its "available cash" to its unitholders. The requirement to distribute all available cash is usually defined in the MLP's partnership agreement.

43. While most MLP partnership agreements require the distribution of all available cash, the GP usually has discretion to set aside reserves before distributing the cash. Typically "available cash" means all cash on hand during a quarter, less: (1) reserves established by the general partner to provide for the proper operation of the business; (2) cash necessary to comply

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

with debt covenants; (3) reserves necessary to provide for distributions for any of the next four quarters; and (4) working capital borrowings after the end of a quarter.

44.     The organizational structure of an MLP gives the GP wide discretion. Nonetheless, because the MLP is traded based on a multiple of cash flow, the more assurance an investor has that he will receive cash distributions, the greater the market valuation.

**4.     MLP Incentive Distribution Rights**

45.     Generally, the GP of the MLP dictates the amount of the MLP's distributions to its LPs.  In a typical arrangement, in addition to the MLP distributions paid out based on the GP's LP unit holdings, the GP also holds incentive distribution rights ("IDRs") that entitle it to a specified proportion of the LP's quarterly distribution.  An MLP's IDR schedule is usually structured in a manner that encourages the GP to drive distribution growth at the LP level.  With the typical IDR schedule, the GP receives an increasingly higher percentage of the LP's incremental cash flow once the payout on the common units reaches certain predetermined targets.

46.     While the GP may benefit from MLP distribution increases through the LP units it holds, over the long term, the largest portion of its cash flow is expected to be derived from its ownership of IDRs.  Through its IDRs, the GP will increasingly benefit from successive distribution increases.  Owning IDRs incentivizes the GP to grow the overall MLP distributions by entitling GPs to receive a higher percentage (generally up to 50%) of incremental cash distributions when the distribution to LP unitholders reaches certain thresholds.

47.     IDRs typically begin with the GP receiving a very small percentage of the total cash flow, equal to its LP equity interest.  When the distribution increases to the next tier, the GP will begin to receive a higher percentage of the cash flows above that point according to a defined IDR schedule.  Typically, the highest tier is a 50/50 split of incremental cash flow.



Thus, there is an alignment of interests between GPs and LPs, in that both want to see distributions to LP unitholders grow steadily over time.  As the MLP moves into the higher IDR splits, publicly traded GPs (which receive the IDR distributions) are often awarded premium valuations by investors in those GPs.

### 5.    The Prototypical MLP Investor

48.    MLPs, such as Teekay's subsidiaries TGP and TOO, and their parent GPs, such as Teekay, are commonly referred to as "yield" stocks, which means they attract investors seeking a steady stream of income in the form of regular dividends (e.g., quarterly), as opposed to a "growth" stock from which investors seek to gain value from the increase in the company's stock price.  As such, MLPs and their GP parents are most appropriate for long-term investors seeking a high level of current income in the form of regularly-paid dividends.

49.    As discussed above, MLPs are most commonly present in the energy industry where the underlying businesses ordinarily provide and manage natural resources such as oil and gas.  These types of business endeavors earn stable income often based on long-term service contracts, which makes them conducive to producing regular, steady income streams that enable MLPs and their GP parents to offer regular dividends to investors.

50.    MLP investors and, in turn, investors in GP parents of MLPs, find midstream energy industry MLPs and their GP parents attractive because such companies generally have steady cash flows regardless of whether energy prices fluctuate up or down (i.e., regardless of the rising or declining prices of oil), so investors hope to continue to receive dividends from such companies even when the energy industry, as a whole, is declining.  As a result, the amount a given MLP and/or their GP parents pay in dividends is the single most important factor investors consider when deciding whether to invest in MLPs and/or their GP parents.

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

51.     Because of the importance of distributions—and the resulting dividends paid to investors—it is not surprising that MLP and parent GP investors want to avoid companies that could cut distributions.  In the MLP sector, the best MLPs are able to access capital when needed to organically grow even in challenging markets.

**6.     MLPs' Mechanisms For Funding Growth**

52.     In order to grow their dividends, which is important to MLP investors, MLPs must constantly grow their operations.  They do this by purchasing or building new operating assets (such as tankers or gas pipelines).  MLPs generally have three means of financing new operating assets: (1) issuance of equity; (2) use of debt financing; or (3) use of internally generated funds.

53.     When MLPs are performing well in the stock market and their units are trading at prices that reflect underlying asset values, the issuance of new LP units by an MLP is a primary way to finance growth projects.  New investors are brought in thereby diluting existing investors, but the expectation is that the returns from the new operating assets to be acquired is greater than any dilution and thus the existing LP unit holders benefit from the new investment.  Such share issuances are said to be accretive to existing unit holders because it increases the dividends they can earn.

54.     On the other hand, when unit prices are depressed (because of general market or other conditions), more shares have to be issued to raise the same amount of funds than when share prices are at higher levels, and the resultant dilutive effect of the issuance of shares may outweigh the benefits that are obtained from the operating assets that are acquired from the funds raised.  Under these conditions, it is not in the interest of existing unit holders to raise a substantial amount of funds from the issuance of new shares to fund growth projects.  Thus, access to equity capital through the issuance of new shares depends significantly on the public



1   prices for MLP units—which, in turn, depends in significant part on investor confidence in the

2   MLP.

3        55.     A second means for financing growth projects is for an MLP to obtain debt

4   financing, generally through a loan from a bank or the issuance of bonds to investors.  While not

5   diluting existing unitholders, this form of financing results in some of the MLP's cash flow being

6   diverted to interest payments. Depending on the rate of interest, this can be more or less

7   attractive to an MLP than equity financing.

8        56.     In general, MLPs rely primarily on both debt and the issuance of new shares to

9   fund growth projects.  The relative proportion of each type of financing that is used depends on a

10  variety of factors, including unit prices on the open market, interest rates, the ability to sell units

11  in amounts needed, and the ability to sell bonds or obtain loans at the necessary levels.

12       57.     MLPs can also fund growth through internally generated funds.  However,

13  because MLP investors rely so heavily upon the dividends they receive through their unit

14  holdings—and because the primary reason for the MLP to exist is to distribute income in a tax-

15  efficient manner—MLPs are less likely than other corporate entities to rely on internal financing

16  because of the negative impact it has on distributions to unit holders who, as explained above,

17  primarily purchase LP units in MLPs for the reliable income stream.

18       58.     An additional source of capital for MLPs can be through their GPs.  Some MLPs

19  (such as TOO and TGP) are controlled by GPs that are themselves publicly-traded (such as

20  Teekay).  When that publicly traded GP has few or no operating assets, and its primary business

21  is managing its MLP daughter companies, it is known as a "pure play GP."  In such a structure,

22  the MLPs can issue equity and debt to finance growth, and the GP can do the same, relying on its

23  income stream from the MLP daughters to pay its shareholders and repay any debt issued at the



1    GP level.  As explained below, this is the structure that was adopted by Teekay through a series

2    of actions that were largely completed by June 2015.

3         59.    The two-tier structure (publicly traded MLPs controlled by publicly traded GPs)

4    is the reason many companies that generate significant amounts of cash income prefer the MLP

5    structure.  Cash is distributed from the MLPs to the GP (and LP unitholders) on a tax-free basis,

6    and both the GP and the MLPs it manages/controls can raise capital for projects, allowing for

7    greater flexibility in financing.

8

9    **B.     TEEKAY'S BUSINESS**

10        **1.     General Background**

11        60.    Defendant Teekay is a corporate entity that is a leading provider of international

12   crude oil and gas marine transportation services and also offers offshore oil production, storage,

13   and offloading services, primarily under long-term, fixed-rate contracts.

14        61.    Between 2005 and 2015, Teekay underwent a major transformation from being

15   primarily an owner of ships in the cyclical spot tanker business to being a growth-oriented asset

16   manager in the marine midstream MLP sector that owned MLPs with operating assets.  As of the

17   end of 2015, Teekay controlled its daughter MLPs, TOO and TGP, as well as Teekay Tankers.

18   Teekay also directly owned three FPSO units and one conventional tanker.  Other assets that

19   formerly had been owned directly by Teekay had been "dropped-down" (sold) to its daughter

20   MLPs so that it could become a "pure play" general partnership (i.e., owning no or very few

21   operating assets at the corporate level with its primary assets being its ownership interests in

22   operating MLPs).

23        62.    Teekay, through its exclusive ownership of Teekay GP L.L.C. and Teekay

24   Offshore GP L.L.C., owns all of the outstanding IDRs of TGP and TOO.  Through this

25   relationship, TGP and TOO make regular cash distributions to Teekay.  As discussed in more



depth below, Teekay used these cash distributions to pay dividends to its shareholders.  Thus, TGP's and TOO's distributions to Teekay had a direct impact on Teekay's dividends paid to shareholders.

### 2. Teekay's Growth Projects and Means of Financing Them

63.    The nature of the midstream MLP energy sector requires expensive asset purchases that then yield steady income streams for years, sometimes decades, to follow.  As of June 30, 2015, Teekay (and its daughter companies) had committed to the construction of 11 LNG carriers, four long-haul towage vessels, two UMS, three shuttle tankers, one FSO conversion, and one FPSO upgrade, for a total cost of approximately $3.8 billion, excluding capitalized interest and other miscellaneous construction costs. These committed construction projects were to be delivered over the 2016-2019 period.  As of the end of June 2015, Teekay (or its daughter companies) had paid approximately $808.5 million toward the construction of these vessels.  Additional payments were scheduled in the remainder of 2015 (about $300 million), 2016 (about $781 million), 2017 (about $1 billion), 2018 (about $619 million), and 2019 (about $238 million).  In addition to these committed vessel construction projects, in October 2014, TOO committed to the purchase of six towing and installation vessels in 2015. As of June 30, 2015, TOO acquired five of the vessels for a total price of $183.5 million, of which about $126 million was debt financed and about $57 million was financed through existing liquidity.

64.    Given the enormous expense required to purchase such multi-billion dollar assets, Teekay's ability to obtain external financing to fund growth projects is integral to its business.  Without access to external financing, Teekay cannot purchase additional revenue-producing assets and still maintain its dividend payments to shareholders.  Due to the size and complexity of the vessels that Teekay's daughter companies committed to purchase, these vessels take years to construct.



65.     As with most MLPs, as explained above, Teekay and its daughter MLPs (TGP and TOO) had a number of sources of financing to fund TGP's and TOO's growth projects during the Class Period.  These included: (1) equity financing by issuing LP units in the equity market, which in Teekay's case traded on the NYSE; (2) debt financing from bank loans or in the form of bonds, notes, or other debt instruments; (3) debt financing in the form of short-term vendor financing, which is credit lent to Teekay (or its daughter companies) from the companies that built the assets; or (4) retaining TGP's and TOO's revenue to fund future growth (internal financing).  For any particular asset purchase, TGP and TOO would ordinarily utilize one or more of the foregoing financing sources depending on the specific conditions in the debt and equity markets.

66.     During the Class Period, Teekay's ability to obtain external debt financing was reflected in the debt rating assigned by credit rating agencies, such as Moody's.  As the chart below depicts, from as early as 2011 through the end of the Class Period, Teekay's Moody's credit rating remained uniform, at a "B2" level:



67.     Like most MLPs, Teekay avoided heavy reliance on internal financing as that would limit its ability to pay its all-important dividend to its shareholders.  As such, if external sources of financing became unavailable, it would have immense consequences on TGP's and TOO's ability to fund their growth projects and still pay dividends.

1

**C.      THE ENERGY INDUSTRY ECONOMIC DOWNTURN**

2

68.     From 2009 through 2014, the price of crude oil futures rose from as low as $46.49

3

to as high as $114 per barrel.  With this substantial increase in the price of energy commodities,

4

billions of dollars were spent on developing infrastructure to support the midstream MLP market

5

(i.e., capital expenditures on midstream MLP assets such as storage facilities, pipelines, *etc.*).

6

This surge in the midstream energy industry resulted in a number of new midstream MLP public

7

offerings and caused the sector to boom, which, in turn, caused investors to flock to MLPs to

8

cash in on their high-yield dividend streams.

9

69.     This process came to a halt, however, in late 2014, when the price of crude oil

10

futures plummeted from its previous high to as low as $49 per barrel.  Despite the fact that

11

midstream MLPs' revenues are not directly tied to fluctuations in the prices of underlying energy

12

commodities, the energy industry economic downturn had an indirect effect on midstream MLPs

13

because, in many cases, midstream MLPs' contracts with their clients had commodity price risk

14

built into them.  This issue was further exacerbated by the fact that the decline in energy

15

commodities led to a decline in production that had a detrimental effect on midstream MLPs

16

engaged in the business of producing, storing, and transporting energy commodities.  Moreover,

17

the economic downturn caused an industry-wide downgrade in credit ratings for energy

18

companies, which increased the cost of capital to fund MLP growth projects, all of which

19

reduced MLP profit margins.

20

70.     By at least September 2014, if not sooner, it was apparent to energy industry

21

experts and analysts that "the party is pretty much over," as stated by Danielle Sandusky,

22

principal at Source Energy Advisors LLC, a published expert on the declining energy industry

23

trend at the time.


1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

71.     The energy market collapse caused investors to become concerned regarding the long-term viability of energy MLPs.  The Alerian MLP Index, which is the leading barometer of the energy MLP industry and includes 50 prominent companies that comprise 75% of available market capitalization in the MLP sector, fell nearly 27% from the beginning of 2014 through September 2014.  During that same period, at least thirteen MLPs reduced their cash distributions to unit holders.

72.     Teekay's share price was not as heavily impacted by falling energy prices during the first three quarters of 2014 as many other MLPs.  Its share price increased from $47.34 on December 30, 2013, to a high of $67.98 on September 30, 2014.  And throughout virtually all trading days during 2014, it traded above $50 per share.

**D.    DEFENDANT'S' FRAUDULENT SCHEME**

**1.    Prior to the Beginning of the Class Period, Defendants Announce an Increased Dividend**

73.     Knowing that investors in MLPs and their GP parents are focused on dividends as the key metric when assessing whether to purchase stock in such entities, Defendants, over an extended period, touted their plan to substantially increase Teekay's dividends in order to lure investors into buying Teekay common stock.  From September 29, 2014, through June 2015, Defendants repeatedly told investors that Teekay planned to substantially increase its quarterly dividend from $0.31625 to $0.55 per share once it had transferred ownership of the $1.26 billion *Petrojarl Knarr* FPSO unit to TOO as part of its plan to transform itself into a "pure play" GP.

74.     Specifically, on September 29, 2014, Teekay announced that its Board of Directors voted to approve a new dividend policy under which Teekay would distribute to its shareholders a majority of the cash flows it received from its ownership of TGP and TOO pursuant to Teekay's IDRs with both subsidiaries.  Teekay told investors that, once implemented, its quarterly dividend payment would be primarily based on the cash flow contributions from the

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Company's general partnership and limited partnership interests in TGP and TOO. Teekay

promised that the new, heightened dividend plan would go into effect immediately following the

Company's dropdown of the *Petrojarl Knarr*, to TOO.

75.     In Teekay's September 29, 2014 press release, Evensen heralded the Company's

increased dividend to investors, stating:

> **Based on the cash flow growth expected to be generated by our combined GP and LP ownership interests** following the dropdown of the *Knarr* FPSO to Teekay Offshore, **we intend to increase Teekay's annualized cash dividend to between $2.20 and $2.30 per share effective for the first quarter of 2015, which represents an increase of approximately 75 and 80 percent above our current annualized dividend** of $1.265 per share ….

> Our new dividend policy represents the next step in Teekay's transformation towards a pure-play general partnership structure **and reflects our commitment to generate sustainable long-term value for our shareholders …. Once implemented, the new dividend policy will enable Teekay shareholders to directly benefit from cash flow growth of our daughter subsidiaries [TOO and TGP]**, including our two general partnership interests, both of which are in the early stages of the 50 percent incentive distribution rights tier, or high-splits.

To further entice investors, Evensen promised that Teekay's dividend would continue to increase

based on TGP's and TOO's growth projects:

> **With our existing backlog of over $4.5 billion of known growth capital expenditures at [TOO] and [TGP], we expect that Teekay's dividend will *further grow by approximately 20 percent per annum over the three years*** following the dropdown of *Knarr* FPSO and initial dividend increase. **In addition, with the strong industry fundamentals in our offshore and gas businesses, both partnerships are actively bidding on new projects which, if successful, could provide further potential upside to Teekay's future dividends**.

76.     The following day, Teekay held the "Teekay 2014 Investor Day" conference call

with analysts and investors. During the call, Defendants repeated their statements regarding the

Company's new dividend plan and again promised that the Company would continue to increase

its dividend 15-20% each year for the next three years based on the quarterly cash distributions

made by TOO and TGP to Teekay. Defendants explained that Teekay's revenue source to pay

its increased dividends flowed from TGP's and TOO's growth projects. As a result, both

subsidiaries' ability to obtain external financing to fund those growth projects was integral, if not

AMENDED CLASS ACTION COMPLAINT - 22
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

essential, to Teekay's ability to maintain and further increase its dividends.  Evensen assured

investors that based on a "backlog" of growth projects *already* in existence at that time, Teekay

would be able to further increase its dividends:

> And now **probably the number one reason many of you are here today or listening on the webcast is Teekay's new dividend policy** …. This is an important part of our transformation into being a pure play GP, but it's also a natural extension of … the growth activities to our daughter companies. And there are really two elements to it; the initial step up and the rate of dividend growth. The initial step up in dividend of 75% to 80% from $1.26 to $2.20 to $2.30 per share is significant, commencing for the first quarter of 2015 subject to the successful dropdown of the *Knarr* FPSO. ***And with our significant existing backlog of $4.5 billion of known growth CapEx, which we continue to add to***, **we expect our dividend to continue to grow by approximately 20% per annum for the next three years** after the initial step-up. *[Lok] will discuss why the 20% growth rate is not only achievable*, **but in fact there may be further upside potential given the strong industry fundamentals**. And secondly, our 20% compound growth rate is based on an initial coverage ratio of 1.15 to 1.25 and we intend to reduce that coverage over time. **So you can see that our new dividend policy and its targets are very achievable**.
>
> So my financial discussion today will focus on two things; first is on our balance sheet strength ***and our ability to finance that growth***; and secondly, I'm very excited to unveil the details of our new dividend policy and where all that growth translates into under this new policy.

77.     Evensen stressed that Teekay was then-able to fulfill their promise of further

increasing Teekay's dividend because TGP and TOO *already* had access to external financing

sufficient to fund their *current* and future growth projects.  In particular, he stressed the ability of

Teekay's daughter MLPs to raise equity capital through the sale of LP units to fund growth

projects, and as discussed above, Teekay's debt rating remained stable throughout the Class

Period:

> And similar to other publicly traded GPs, we believe that Teekay should also have a fairly conservative financial profile, **which enables a higher dividend payout ratio going forward. Now, Teekay Parent's balance sheet is able to remain strong and is not required to issue equity at the parent Company level to fund the growth and** *that's because our daughter companies have the financial capacity to support their own growth*. If you look at this, looking at TGP's and TOO's current market capitalization … **that results in a total investment capacity at TGP of about $1.4 billion per annum and about $1.1 billion per annum for TOO, for a combined investment capacity of $2.5 billion per annum;** *and that is more than sufficient not only to fund existing backlog of projects that we have, but also the new projects that we are currently bidding on*. And this growth capacity should expand as the daughter companies grow and

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

their market capitalizations increase. ***And our daughter companies have a proven and consistent access to equity capital***. **You can see in the chart, even during the financial crisis of 2008-2009, our MLPs in our daughter companies were able to access the capital markets.** And on a combined basis, the group of daughter companies have raised a total of $3.7 billion of third-party equity since 2005, which is when we launched our first daughter company TGP.

78.     Based on Defendants' statements—that Teekay would continue to increase its dividend based on TGP's and TOO's present ability to finance its existing and future growth projects—the price of Teekay's stock increased nearly 14% in a single day, from $58.36 on September 29, 2014, to $66.36 on September 30, 2014.

79.     Analysts reacted favorably to Defendants' statements and Teekay's dividend announcement, stating:

> While we had been expecting TK to guide to a dividend shift today, TK's expected range ($2.20-2.30/share), was ahead of our 2015 estimate of ~$2/share (which should be good for the stock) and we view the fact that the company put out a firm range on its dividend as a pleasant surprise …. We think that forward growth is the most important aspect of the story and that **TK's new payout policy, along with management's expectation of a ~20% 3year CAGR for its dividend, positions it well among high-growth Ccorp GPs that are yielding between 23%. We reiterate our Outperform rating, and believe that TK has positioned itself as a multiyear, highgrowth GP story. We will look for more details at today's investor day.**

Other analysts shared this optimistic outlook based on Teekay's statements:

> **Net takeaway from release - positive - higher than expected dividend re-set level reinforces our view of TK as one of the best MLP GP stories out there -** TK announced plans to step up its dividend from a current rate of $1.265/share to an annualized 1Q15 dividend of $2.20-$2.30, which is ~15% ahead of our prior expectation of $1.95. The targeted three-year annual growth rate of 20% with coverage of 1.15x-1.20x is in line with our expectations, but now from a higher base.
>
> **Valuation highly attractive at current levels in our view.** We base our Outperform rating on our view that TK's transition to a pure MLP GP crystallizes for investors and TK valuation marks closer to MLP GP comps. We think this release clearly lays out the company's transition strategy for investors, and we expect the news to be well received by the market tomorrow. In our view, the 20% per annum growth profile justifies a sub 3.5% yield on 2016 estimated dividends, which underpins our $80/share price target (and the higher base would bias us to our upside case of $100/share).

AMENDED CLASS ACTION COMPLAINT - 24
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

2.      **The Beginning Of The Class Period:  Teekay's February 2015 Earnings Call**

80.     On February 19, 2015, during Teekay's earnings call with investors, Defendants again touted the Company's increased dividend and explained that it was based on TGP's and TOO's cash flows to Teekay: "[b]ased on the dividend cash flows Teekay Parent receives from its daughter entities, we intend to increase Teekay's annualized cash dividend to be between $2.20 and $2.30 per share, which represents an increase of approximately 75% to 80%." Defendants repeated these statements in the presentation accompanying the earnings call, as well as in Teekay's February 19, 2015 press release.

81.     During that call, analysts recognized that substantial portions of TGP's and TOO's future growth projects would need to be financed.  However, given the economic downturn in the oil industry at that time and the attendant decline in energy company stock prices reflected across the market as whole, analysts were particularly concerned about Teekay's ability (or lack thereof) to access equity capital markets to fund its growth projects.  Although Teekay's share price had not declined as much as other MLPs during 2014, by February 2015, it was under increasing pressure, trading at less than $45 per share—a decline of one-third its value from the time of the announcement of its enhanced dividend policy on September 29, 2014.

82.     Recognizing the link between the increased dividend and TGP's and TOO's ability to obtain external financing to fund growth projects, at least one analyst asked Defendants during the February 19, 2015 earnings call about Teekay's subsidiaries' ability to finance the known growth projects that Defendants repeatedly had been touting as the basis for the Company's increased dividend, and whether TGP's and TOO's ability to obtain sufficient financing was affected by the economic decline:

> Hi, Peter [Evensen]. Thank you. **I want to ask you about your dividend forecast and what are the risks on this dividend forecast** on your target with – the growth target that you set up back in September, *given the difference in prices of the MLPs*. How much is dependent on the **ability of the MLPs to raise the** *equity at a certain price* and how much can be funded? If you can give us an

AMENDED CLASS ACTION COMPLAINT - 25
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  estimate of **what is the capital that these MLPs, they need to raise in order to allow you to do -- increase your dividend after your target level?**

2  In response, Evensen quelled analysts' and investors' concerns by reassuring them that the

3  economic downturn plaguing the energy industry and equity markets would have no effect on

4  Teekay's dividend plan because TGP and TOO had multiple ways to finance their growth

5  projects, all of which were viable and readily accessible at that point in time:

> Hi, Fotis. I guess you're sort of referring back to our Investor Day materials, which was an illustrative case that we provided. **If you look at, again, if you look at the chart, the projects that we have, that we're already committed on slide 10 of our presentation, those, of course, *that's built in growth for us.*** In terms of the unit prices, of course, to having a lower unit price in TOO right now, hurts the accretion of some of those projects for TOO. **It's not so much for TGP at this point. That's part of the reason why we've been holding off issuing equity at TOO and financing the *Knarr* with vendor financing until things normalize a bit.** I guess when you look at from the parent perspective, if you look at the *Knarr*, for example, even though the accretion may be a little bit lower for the parent, **it's partially offset by the fact that we were taking back units, perhaps, at a lower unit price than we would have. So, we're actually getting more LP units and more GP units which offsets that accretion. So from a parent's perspective, there is a mitigant there. Again, we think that the enterprise for TOO will normalize over time and especially given the accretive nature of these projects, they will add to the distributable cash flow of the TOO over the next few years.**

83.    Defendants doubled-down by presenting a slide promising that Teekay "currently" had, at that point in time, "$7 billion of known accretive growth" to "support future dividend increases":



84.     To further assure investors that Teekay's increased dividend was sustainable and would continue to increase in the future despite the economic downturn, Lok once again explained that TGP's and TOO's growth projects were financed through external sources, such as debt commitments, *long before* they were delivered and therefore were not affected by the *current* decline in the equity markets, all of which Defendants claimed supported further dividend increases:

> We have *a lot of time to finance* the construction payments. **There is a good portion of those that are financed especially with debt facilities and with low interest rates and debt margins coming down.** *That's also an offset to the higher equity cost.* **So, we layer in the equity cost over time and it's sort of an averaging in.** **So I think in the grand scheme of things,** *it doesn't have a huge impact in the long term*.

Evensen further soothed investors' concerns by adding:

> I actually think that's a great point, [Lok]. **The cost of our debt financing has actually been dropping.** *That has made up for, if you will, the higher cost of the equity side*. **When you balance it out, actually, our cost of capital has been dropping.** We just went around with our bankers and I would say our bankers really like our fixed rate contract cash flow. **So, we're quite optimistic about that.**

85.     As explained in more detail below, these statements regarding Teekay's and its daughter MLPs' ability to fund growth through external debt and equity sources—in the face of massive declines in its share price and the impacts of that decline on its external financing capabilities—were untrue, and these statements mark the beginning of the Class Period.

86.     In the ensuing months, while Teekay completed the dropdown of the *Petrojarl Knarr* to TOO, Defendants continued to tout Teekay's increased dividend in Teekay's May 13, 2015 press release, May 14, 2015 earnings call, accompanying presentation, and earnings results publication, as well as during Teekay's June 10, 2015 annual general meeting speech.

**3.      On June 30, 2015, Teekay Increases Its Dividend by 75%**

87.     On June 30, 2015, Defendants informed investors that Teekay effectuated the dropdown of the *Petrojarl Knarr* and was increasing its dividend by 75%.  This announcement

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

was highly anticipated by the market given Teekay's extensive signaling over the preceding nine months of the new dividend policy.

88.     Thus, on June 30, not only did Defendants announce that they implemented the increased dividend plan, but they reiterated their earlier promises to investors that Teekay would continue to increase its dividend by 15-20% per annum for the next three years due to TGP's and TOO's already-established "robust pipeline of profitable growth projects."

**4.     Defendants Again Reassure Investors That Teekay's Dividend Will Not Be Impacted by the Energy Industry's Economic Decline**

89.     On August 6, 2015, in reporting Teekay's 2Q2015 earnings, Defendants again touted the 75% increase of Teekay's dividend and the 15-20% annual dividend increase each year over the next three years.  Defendants assured investors that this dividend growth was sustainable due to TGP's and TOO's "access to competitive bank financing and multiple capital markets."  Defendants informed investors that TGP and TOO had, at that time, sufficient financing to fund their "strong pipeline of growth projects" which would generate TGP's and TOO's cash flows to Teekay, which would then be paid to investors via Teekay's dividends.  Defendants reiterated these statements in the Company's August 6, 2015 press release as well as during Teekay's August 7, 2015 earnings call and accompanying earnings presentation.  These statements caused Teekay's stock price to increase 9%, from $32.20 per share on August 5, 2015, to $35 per share on August 10, 2015.

90.     Notably, in Teekay's August 6, 2015 earnings result publication, Evensen assured investors that Teekay's increased dividend was immune to the economic downturn in the energy industry by stating that Teekay's business had "no direct commodity price exposure" and, as a result, TGP's and TOO's "long-term fundamentals … remain[ed] attractive" "[d]espite the current volatility in the energy markets."



91.     In reality, however, by mid-2015 the crude oil market was nearly a year into a deep slump, which caused energy company stock prices to collapse.  Teekay's share price was, like all MLPs, being substantially impacted.  It had declined from a high of $67 per share in September 2014 (when the new dividend policy was announced) to just $34.21 per share by August 6, 2015—a decline of nearly 50%.  This created mounting concern among Teekay investors that the economic downturn would spill over into Teekay's processing, storage, and transportation business.  Defendants made clear, however, that Teekay would not be affected by the macroeconomic environment.  For instance, Defendants explained to a jittery market:

> **Despite the current volatility in the energy markets**, **the long-term fundamentals for both [TGP's and TOO's] markets remain attractive**. With a strong pipeline of contracted growth projects directly at our daughter entities ***and their access to competitive bank financing and multiple capital markets***, **we believe Teekay Parent is well-positioned to achieve strong** free cash flow and **dividend growth.**

92.     Defendants did not stop there.  They further assured investors that the factors underlying Teekay's promised dividend increases—TGP's and TOO's growth projects that were driving the much-touted dividend increases—were intact and would not be impacted by the energy industry decline.  Investors, recognizing that the substantial decline in Teekay's (and its daughter MLP's) share price made the issuance of new equity units extremely unattractive, raised concerns that Teekay could not both fund its growth and maintain its dividend.  In response, Evensen denied that there were any concerns with Teekay's ability to finance growth projects from external sources and specifically referred to a slide provided to investors that purported to show that more than 90% of Teekay's financing for its growth would come from committed/anticipated debt financing:

AMENDED CLASS ACTION COMPLAINT - 29
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## Built-in MLP Growth Supported by Continued Access to Capital

TGP
61%
$6.3B
Total Committed
Growth CAPEX
TOO
39%

($ millions)

| Daughter Entity | Remaining Committed CAPEX* | Committed / Anticipated Debt Financing | Minimum Equity Requirement |
|---|---|---|---|
| TGP | $2,977 | $2,839 | $138 |
| TOO | $1,672 | $1,404 | $268 |
| Total | $4,649 | $4,243 | $406 |

*As at 30 June 2015

Access to competitive bank financing and multiple capital markets supports 15-20% Teekay Parent dividend growth target

8

93. The $400 million in total required equity financing over the next three years amounted to just more than a year's worth of Teekay's stated annual distribution (approximately $365 million was what Teekay had announced it would likely distribute in 2015 alone).

94. At the earnings conference call on August 7, relying on the above slide, Evensen touted Teekay's then-present access to "attractively-priced debt financing" as a means to fund its growth:

> Turning to slide 8 [set forth above], **I want to address investor concerns about Teekay LNG and Teekay Offshore, needing to raise significant equity capital at today's depressed unit prices to support built-in growth**. In fact, as we said on their respective earnings calls, this is not the case. Our CapEx financing is well on track and **we're not as reliant upon raising equity capital at today's depressed unit prices than some might think**.
>
> In the table on this slide, we've laid out our remaining capital expenditure requirements for our existing growth projects at Teekay LNG and Teekay Offshore, along with the related committed or anticipated debt financing. As you can see from the table, **the majority of the remaining capital expenditure is able to be funded with attractively-priced debt financing**.
>
> While not all of our required debt financing is currently in place, this is normal. With our CapEx spread out over multiple years and typically back-end weighted, such that the bulk of the capital expenditure is made just prior to delivery. And **we generally secure debt financing closer to vessel delivery to minimize banking fees.**

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

95.     Evensen then went on to explicitly link the touted ability of TGP and TOO to obtain debt financing with the promised continued growth in Teekay's dividends:

> With Teekay Parent's new dividend linked to the growth of dividends at our underlying daughter businesses, **the ability of our daughters to access competitively-priced bank financing and multiple capital markets, in turn, supports our ability to achieve Teekay Parent's targeted dividend growth of 15% to 20% per year.**

**5.     The November 2015 Statements**

96.     On November 6, 2015, in discussing the previous quarter's performance, the Teekay Defendants continued to tout the June 2015 dividend increase and assure investors that Teekay's dividend would increase further by 15-20% each year for the next three years despite the economic downturn in the energy industry.

97.     Defendants' multifaceted scheme accomplished their desired objective as analysts repeatedly echoed Defendants' statements despite the surrounding energy industry recession. Due to Defendants' statements, Teekay's stock price was artificially inflated and maintained at artificially inflated levels throughout the Class Period.

98.     Shortly after Teekay's earnings call, Moody's addressed Teekay's pending $200 million add-on to existing Teekay unsecured notes due 2020. Moody's indicated that Teekay's new issuance would receive an investment grade of B2, the same rating as Teekay's debt from 2011 through the end of the Class Period, and that the corporate family rating of Teekay would maintain its strong rating of B1. Moody's warned, however, that "[w]hile not expected, a decline of more than $40 million in the annual distributions received by Parent could pressure the rating …." It further warned that:

> A decline in the distributions made by [TGP or TOO] would reduce the cash flow Parent receives. This would further pressure the market prices of the limited partnership units and could also pressure the ratings.

99.     Days later, on November 18, 2015, during the RBC MLP Conference November 2015, the Defendants repeated their same mantra on access to external funding and the

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

sustainability and growth of the Teekay dividend payments to shareholders.

**E.    The Truth Is Revealed**

100.    Only a few weeks after Defendants' November statements, Defendants blindsided investors by abruptly announcing on December 16, 2015, that—contrary to their repeated promises that Teekay's heightened dividend was not only sustainable, but would continue to grow due to TGP's and TOO's "existing" and "known committed" growth projects that were supported by external financing from readily accessible "multiple capital markets and bank financing"—the Company's Board of Directors approved a plan to *slash* **Teekay's quarterly dividend roughly 90% from $0.55 to $0.055 per share** ($2.75 annually to $0.22 annually). This dividend reduction was to be in place for up to three years.

101.    In stark contrast to Defendants' prior statements touting a rosy future for Teekay and its MLPs, Defendants stunned investors with news that TGP and TOO had reduced their quarterly cash distributions to Teekay so that they could "use a significant portion of their internally generated cash flow **to fund the equity capital requirements of their future profitable growth projects** and reduce debt levels, **eliminating their need to access the equity capital markets for the foreseeable future**."  This information blatantly contradicted Defendants' statements over the preceding six months, and from as recently as only a few weeks prior, reassuring investors that Teekay's increased dividend plan was sustainable because Teekay had access to external financing sufficient to fund TGP's and TOO's future growth projects.

102.    Further shocking investors and contradicting their prior statements that Teekay was not affected by the declining equity market because of its ability to obtain "attractively-priced" debt financing to cover 90% of its funding needs for its growth projects, Evensen stated:

> **[TGP and TOO] require capital to fund their growth** and there is currently a dislocation in the capital markets relative to the underlying stability of our MLPs' businesses. As a result, **their cost of equity has increased to the point where it is currently not an economically attractive source of growth capital**.



**Based on the upcoming capital requirements of [TOO and TGP]'s committed growth projects and bond maturities**, coupled with the uncertainty of how long it will take for the **energy and capital markets to normalize**, we believe the distribution reductions announced today are in the best interests of long-term investors .... As a result of their announced distribution reductions, our MLPs will now be able to **fund their future capital commitments** and reduce their debt levels **with internally generated cash flow rather than permanently dilute their unitholders through the issuance of *expensive equity***.

103.    During the Company's conference call with investors later that day, Evensen and Lok further contradicted their prior statements—that TGP and TOO *already* had sufficient funding in place (or readily obtainable) from external sources to fund growth projects through 2020—by now stating that "**[TOO and TGP] require capital to fund their growth**, and there is currently **a significant dislocation in the pricing of energy company securities in both the equity** and bond capital markets." Defendants stated further:

**As both Teekay Offshore and Teekay LNG require capital to fund their existing growth commitments, the current weakness in their respective unit prices has raised the cost of issuing equity for our two MLPs to the point where issuing equity is no longer tenable or an attractive source of capital**. In fact, issuing equity or bonds at current levels, or even at levels significantly above where we closed yesterday, would be permanently dilutive to [TOO and TGP]'s current LP unit holders.

Our goal is not to decrease distributable cash flow per unit at each MLP, it is to increase distributable cash flow per unit. As a result, from the perspective of both issuance price and capacity, each of the respective boards came to the view that it is in the best long-term interest of unit and shareholders **to temporarily reduce our cash distributions and dividends and reallocate those funds to pay equity installments on committed growth projects** and bond maturities .... the Boards of both MLPs **wanted assurance that each MLP would not have to issue new equity for the foreseeable future** .... Should the equity and debt capital markets revert to a more normalized pricing basis, we expect to refocus our capital raising efforts on accessing these markets as our primary source of growth capital in the future.

This announcement was particularly surprising since, just months before, Teekay claimed it only needed $406 million in additional equity financing for new projects, but now was claiming that it needed to reduce distributions to unitholders by more than $1 billion over the ensuing 3 years.

104.    Analysts' reaction was swift and severe. During Teekay's December 16, 2015 conference call, multiple analysts voiced their surprise over Defendants' sudden revelation that Teekay did not have sufficient funding from external sources to support TGP's and TOO's

AMENDED CLASS ACTION COMPLAINT - 33
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1

HB  HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

existing and known committed growth projects, and questioned how long prior to the announcement Defendants were aware that they would suddenly have to rely heavily on internal funding—at the expense of the dividend payments to shareholders.  Specifically, an analyst from Wells Fargo Securities stated that Teekay's decision "c[a]me out of the blue," and another analyst from UBS referred to Teekay's announcement as "rip[ping] the Band-Aid off."

105.     Analysts also highlighted how upper-level management decisions, such as Teekay's decision to slash its dividends, are planned and known many months in advance of their announcement:

> I'm just curious, if you could -- **can you walk us through, *over the past three to six months*, exactly how you guys arrived at, one, the timing, and then, two, the decision to reverse course on the distribution? *Obviously, it's a long-term decision***.

106.     In response, Evensen explained that Defendants based their decision on macroeconomic factors and the declining state of the entire energy industry, all of which were present and stable both before and throughout the time that Defendants repeatedly made statements about TGP's and TOO's ability to finance their growth projects and how all three entities were not impacted by the economic decline:

> Sure. Well, we looked at **the general macro environment**, and we looked at the fact that it looks like **OPEC will continue to over produce**, and we looked at the fact that **markets are tending to overshoot on the downside**, as well as the fact that we saw the **US dollar continues to increase**, **which has a negative view on commodities** …. And so we see that what is happening now is going to take longer to repair than it did in 2008-2009. And that was what went into the decision making.

107.     Moreover, Evensen explicitly stated that the underlying factors that caused Teekay to cut its dividend were well-known by Defendants long before their announcement:

> Obviously, **we have some *bond maturities in both TOO and in TK coming up***, and we also have good growth CapEx. **And the reality of that was that *we saw that we were going to require capital*, and that capital *would be expensive***. And as I said in my prepared remarks, if we raised that capital, it would be at a great cost and, ultimately, dilutive.
>
> So we then looked around and said, what should we do? And if we think this is going to last longer, then we really would like that retained cash flow rather than

HAGENS BERMAN

pay it out. On the other hand, if things come back earlier, we can reverse course. As we've said, we believe this is a temporary arrangement.

108.    A few analysts expressed outrage and disappointment with Teekay's unsuspecting announcement and questioned why Defendants did not explore other options, aside from cutting Teekay's dividend by 90%, to finance TGP's and TOO's growth projects.  Specifically, an analyst from Cobalt Capital stated: "I'm a little surprised you guys aren't moving forward more on asset sales, given the existing assets are worth so much higher multiple."  When Evensen responded that "it hasn't been [Teekay's] practice to give guidance going forward," Cobalt's analyst responded, "*[w]ell, it hasn't been your practice to cut dividends by 80%, either, so maybe we should try*."  The analyst highlighted how Defendants' announcement was inconsistent with their prior reassurances that the increased dividend was stable and would continue to grow: "[s]o other than cutting the dividend, **based on everything you guys have said in the past**, has anything changed on the earnings and cash flow of [TGP and TOO], *or you're just deciding to retain more capital because it's too expensive to pay it out?*"

109.    In response to the adverse news, Teekay's stock plummeted over 58% in a single day—from a close of $17.49 per share on December 16, 2015, to $7.27 on December 17, 2015, on extraordinary trading volume of over 29 million shares.  Also, as Moody's had previously warned in November, Teekay's decision to slash its dividends resulted in a Moody's rating action, during which Moody's placed Teekay's debt ratings "under review for downgrade."  Notably, Moody's published that its review would "focus on the rationale and timing of projects that led to the company's decision to accumulate cash at the MLPs."

## F.    Defendants' False and Misleading Class Period Statements

110.    In addition to the statements set forth above, Defendants repeatedly made materially false and misleading statements during the Class Period relating to the sustainability of Teekay's increased dividend plan based on (1) Teekay's inability to externally finance TGP's

AMENDED CLASS ACTION COMPLAINT - 35
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

and TOO's then-current and committed future growth projects, which Defendants claimed were *already* financed and finalized, and (2) TGP's and TOO's ability to obtain additional external financing for growth projects through multiple capital markets and other sources. Contrary to Defendants' assurances to investors that Teekay would not be impacted by the decline in the energy industry and would further increase its dividend by 15-20% each year for the next three years based on TGP's and TOO's "access to competitive bank financing and multiple capital markets," in reality both subsidiaries were unable to utilize external sources to fund their growth projects. Defendants were aware that, as a result, TGP and TOO would *not* be able to sustain their cash distributions to Teekay that were then used to pay Teekay's dividends, and, instead, that TGP and TOO would need to retain that cash to fund their growth projects.

### 1. February 19, 2015 Earnings Call

111. On February 19, 2015, during Teekay's earnings call with investors, Defendants touted the Company's increased dividend, stating "we intend to increase Teekay's annualized cash dividend to be between $2.20 and $2.30 per share, which represents an increase of approximately 75% to 80%."

112. During that call, analysts recognized that substantial portions of TGP's and TOO's future growth projects were financed by utilizing external sources, such as debt and equity capital markets, and analysts were particularly concerned about Teekay's ability (or lack thereof) to access these capital markets to fund its growth projects. One analyst asked:

> Hi, Peter [Evensen]. Thank you. **I want to ask you about your dividend forecast and what are the risks on this dividend forecast** on your target with – the growth target that you set up back in September, *given the difference in prices of the MLPs*. How much is dependent on the **ability of the MLPs to raise the** *equity at a certain price* **and how much can be funded?** If you can give us an estimate of **what is the capital that these MLPs, they need to raise in order to allow you to do -- increase your dividend after your target level?**



113.    In response, Evensen quelled analysts' and investors' concerns by reassuring them that TGP and TOO had multiple ways to externally finance their growth projects, all of which were viable and readily accessible at that point:

> Hi, Fotis. I guess you're sort of referring back to our Investor Day materials, which was an illustrative case that we provided. **If you look at, again, if you look at the chart, the projects that we have, that we're already committed on slide 10 of our presentation, those, of course, *that's built in growth for us*.** In terms of the unit prices, of course, to having a lower unit price in TOO right now, hurts the accretion of some of those projects for TOO. **It's not so much for TGP at this point. That's part of the reason why we've been holding off issuing equity at TOO and financing the *Knarr* with vendor financing until things normalize a bit.** I guess when you look at from the parent perspective, if you look at the *Knarr*, for example, even though the accretion may be a little bit lower for the parent, **it's partially offset by the fact that we were taking back units, perhaps, at a lower unit price than we would have. So, we're actually getting more LP units and more GP units which offsets that accretion. So from a parent's perspective, there is a mitigant there. Again, we think that the enterprise for TOO will normalize over time and especially given the accretive nature of these projects, they will add to the distributable cash flow of the [sic] TOO over the next few years.**

114.    Lok added:

> **We have *a lot of time to finance* the construction payments. There is a good portion of those that are financed especially with debt facilities and with low interest rates and debt margins coming down. *That's also an offset to the higher equity cost*.** So, we layer in the equity cost over time and it's sort of an averaging in. **So I think in the grand scheme of things, *it doesn't have a huge impact in the long term*.**

115.    Evensen further noted:

> **The cost of our debt financing has actually been dropping. *That has made up for, if you will, the higher cost of the equity side*. When you balance it out, actually, our cost of capital has been dropping.** We just went around with our bankers and I would say our bankers really like our fixed rate contract cash flow. **So, we're quite optimistic about that.**

116.    The statements in ¶¶ 113-115 were materially false and misleading because, as set forth in detail above, Defendants knew, as Teekay ultimately acknowledged on December 16, 2015, that neither Teekay nor its subsidiaries TOO and TGP would be able obtain sufficient financing from external sources to fund TGP's and TOO's existing, fully contracted growth projects.  As a result, TGP, and TOO would need to retain the cash distributions ordinarily paid to Teekay (which Teekay had told investors it was going to use to pay its dividends to its

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    shareholders) in order to internally fund those growth projects.  Thus, the statements that Teekay,

2    TGP and TOO had access to sufficient external sources of financing to pay for both subsidiaries'

3    growth projects were materially false and misleading, as were the highly significant and material

4    statements that Teekay could increase and maintain its dividend, and further increase that

5    dividend by 15-20% over the next three years.

6
7            2.      June 30, 2015 Press Release

8            117.    Nine months after first announcing the new, increased dividend plan, Teekay

9    finally announced in its June 30, 2015 press release that it implemented its new dividend policy

10   and increased its dividend 75% to $0.55 per share.  Specifically, Defendants stated:

11           [W]e are implementing Teekay Parent's new dividend policy with an initial
             increase of approximately 75 percent to $0.55 per share, or $2.20 per share
12           annualized, with future increases linked to the growth in the dividend cash flows
             we receive from our daughter entities.
13
14   Evensen added:

15           Based on a robust pipeline of approximately $6.3 billion of known committed
             growth projects at Teekay LNG and Teekay Offshore and with both partnerships
16           continuing to pursue new growth opportunities, *we are targeting Teekay's
             dividend to grow by an average of 15 to 20 percent per annum for at least the*
17           *next three years*.

18           118.    Once again, analysts reacted favorably to Defendants' statements:

19           we continue to view the 2018 dividend as somewhat conservative given it still
             assumes a 1.175x coverage ratio at TK parent …. **Net/net we continue to view**
20           **TK as a compelling dividend growth story, with resilient cash flow streams**
             **and shareholder-friendly management.** We believe shares are currently at near-
21           bottom of trading range, with good potential to re-rate higher on stabilization in
             headline risks (*i.e.* oil prices) **and continued execution on dividend growth**
22           **initiatives**.

23   Analysts echoed Defendants' statements that the increased dividend plan was sustainable

24   because TGP's and TOO's growth projects were well-funded and could obtain additional

25   financing:

26           At TK, management reiterated its $0.75 quarterly ($2.20 annualized) dividend for
27           Q2, a 75% increase over Q1 and a 5% yield at the current price. In addition,
             management guided 15%-20% annual dividend growth over the next 3 years,
28           **driven by its $6.3B pipeline of growth projects at TOO and TGP**.



119.    The statements in ¶¶ 117-118 were materially false and misleading because, as set forth in detail above, Defendants knew, as Teekay ultimately acknowledged on December 16, 2015, that neither Teekay nor its subsidiaries, TOO and TGP, would be able obtain sufficient financing from external sources to fund TGP's and TOO's existing, fully contracted growth projects.  As a result, TGP and TOO would need to retain the cash distributions ordinarily paid to Teekay (which Teekay had told investors it was going to use to pay its dividends to its shareholders) in order to internally fund those growth projects.  Thus, the statements that Teekay could maintain its current dividend and increase that dividend 15-20% over the next three years were materially false and misleading.

### 3.    August 6, 2015 Earnings Results

120.    On August 6, 2015, Teekay published its earnings results for the second quarter of 2015.  Therein, Evensen reiterated Teekay's promise of future dividend increases for each of the next three years and explained that such increases were linked to TGP's and TOO's existing committed growth projects:

> Since reporting first quarter earnings in May, we have achieved key milestones towards the completion of Teekay Parent's transition into a pure-play general partner of two master limited partnerships, most notably … the implementation of Teekay Parent's new dividend policy …. **Teekay Parent's new dividend policy links our dividend to the growing cash flows we receive from our daughter entities**. With an initial increase of approximately 75 percent to $0.55 per share, or $2.20 per share annualized, we are targeting Teekay's dividend to *further grow by an average of 15 to 20 percent per annum for at least the next three years*, **based on** *existing* **growth projects and future growth projects that our daughter entities are pursuing**.

121.    As they had done repeatedly since their first statement announcing the dividend plan, Defendants once again emphasized that Teekay's promise to further increase its dividends was based on TGP's and TOO's ability to obtain financing to fund its existing and committed future growth projects through access to external sources of financing, such as multiple capital markets and sources of bank financing.  Evensen reassured investors that TGP's and TOO's

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

ability to obtain financing and, in turn, Teekay's ability to pay the increased dividend, was not affected by the economic downturn:

> Teekay Parent's growing quarterly free cash flow is primarily supported by the stable and growing cash flows of our two master limited partnerships …. **[TGP] and [TOO] both have … no direct commodity price exposure**. **Despite the current volatility in the energy markets**, the long-term fundamentals for both the [TGP] and [TOO] markets remain attractive. **With a strong pipeline of contracted growth projects directly at [TGP and TOO]** *and their access to competitive bank financing and multiple capital markets*, **we believe Teekay Parent is well-positioned to achieve strong free cash flow and dividend growth**.

122.     The foregoing statements in ¶¶ 120-121 were materially false and misleading because, as set forth in detail above at ¶¶ 116 and 119,  Defendants knew, as Teekay ultimately acknowledged on December 16, 2015, that neither Teekay nor its subsidiaries, TOO and TGP, would be able obtain sufficient financing from external sources to fund TGP's and TOO's existing, fully contracted growth projects.  As a result, TGP and TOO would need to retain the cash distributions ordinarily paid to Teekay (which Teekay had told investors it was going to use to pay its dividends to its shareholders) in order to internally fund those growth projects.  Thus, the statements that Teekay, TGP and TOO had access to sufficient external sources of funding from "bank[s]" and "multiple capital markets" to pay for both subsidiaries' growth projects were materially false and misleading, as were the highly significant and material statements that Teekay could maintain its current dividend and increase that dividend 15-20% each year over the next three years.

**4.     August 6, 2015 Press Release**

123.     In Teekay's August 6, 2015 press release, Defendants repeated their promise that Teekay would further increase its dividend by 15-20% each year for the next three years.  The press release stated, in pertinent part, that Teekay had:

- Implemented new dividend policy: increased second quarter 2015 dividend by 75 percent to $0.55 per share ($2.20 per share annualized) and **linking future**

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

**dividend increases to the growing cash flows from Teekay's publicly-listed daughter entities**.

- **Targeting *15 to 20 percent average annual dividend growth over the next three years*.**

Teekay Parent's new dividend policy **links our dividend to the growing cash flows we receive from our daughter entities**. With an initial increase of approximately 75 percent to $0.55 per share, or $2.20 per share annualized, we are targeting Teekay's dividend to ***further grow by an average of 15 to 20 percent per annum for at least the next three years*, based on existing committed growth projects and future growth projects that our daughter entities are pursuing**.

124.   Further, Defendants made sure to quell investor concern about the surrounding macroeconomic decline in the energy market and assure them that Teekay's dividend would continue to increase due to TGP's and TOO's ability to finance growth projects:

Teekay Parent's growing quarterly free cash flow is primarily supported by the stable and growing cash flows of our two master limited partnerships … [TGP] and [TOO] both have diversified portfolios of fee-based contracts with respective contracted forward revenues of $11.4 billion and $8.4 billion, average remaining contract durations of approximately 13 years and 5 years, **and no direct commodity price exposure**. **Despite the current volatility in the energy markets, the long-term fundamentals for both the [TGP's] and [TOO's] markets remain attractive**. With a strong pipeline of contracted growth projects directly at our daughter entities ***and their access to competitive bank financing and multiple capital markets*, we believe Teekay Parent is well-positioned to achieve strong free cash flow and dividend growth**.

125.   The foregoing statements in ¶¶ 123-124 were materially false and misleading because, as set forth in detail above at paragraphs ¶¶ 116, 119 and 122, Defendants knew, as Teekay ultimately acknowledged on December 16, 2015, that neither Teekay nor its subsidiaries, TOO and TGP, would be able obtain sufficient financing from external sources to fund TGP's and TOO's existing, fully contracted growth projects.  As a result, TGP and TOO would need to retain the cash distributions ordinarily paid to Teekay (which Teekay had told investors it was going to use to pay its dividends to its shareholders) in order to internally fund those growth projects.  Thus, the statements that Teekay, TGP and TOO had access to sufficient external sources of funding from "bank[s]" and "multiple capital markets" to pay for both subsidiaries' growth projects were materially false and misleading, as were the highly significant and material

HB  HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   statements that Teekay could maintain its current dividend and increase that dividend 15-20%

2   over the next three years.

3          5.      **August 7, 2015 Earnings Call and Presentation**

4          126.    Defendants made similar statements regarding the ability to maintain the current

5   dividend, dividend growth, and access to external sources of funding in Teekay's August 7, 2015

6
    earnings presentation:
7

8              • Increased Q2-15 dividend by 75% to $0.55 per share ($2.20 per share
                 annualized)
9              • Linking future dividend increases to the growing cash flows received
                 from daughter entities
10             • Targeting average of **15 to 20% annual dividend growth over next
                 three years**
11
               *Access to competitive bank financing and multiple capital markets*
12             **supports 15-20% Teekay Parent dividend growth target**

13         127.    Defendants reiterated their statements regarding their ability to maintain and

14  increase the dividend during Teekay's earnings call with investors the following day on August

15  7, 2015, during which Defendants stated:

16
               Firstly, with the second quarter dividend, we implemented Teekay's new dividend
17             policy, providing an initial increase of 75% to $0.55 per share, which equates to
               an annualized dividend of $2.20 per share, **with future increases linked to the**
18             **growing dividend cash flows we received from our daughter entities**. **With a**
               **robust pipeline of over $6 billion of** *current known growth projects* **at our**
19             **daughter entities**, and additional growth projects that our daughter entities are
               pursuing, we are targeting Teekay's dividend to grow *further by an average of*
20             *15% to 20% per annum for at least the next three years*.

21         128.    Defendants then fully reassured investors that the factors underlying Teekay's

22  promised dividend increases—TGP's and TOO's growth projects—were intact and would not be

23  impacted by the energy industry decline.  In fact, in response to explicit concerns raised by

24  investors that Teekay could not fund its growth and maintain its dividend because of conditions

25  in the energy industry, Evensen doubled down and stated that Teekay did not even need to raise

26  much equity capital from sales of new Teekay, TGP, or TOO units, but could rely on

27

28

HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1    "attractively-priced debt financing," which he claimed, in a slide provided to investors (*see* ¶ 83,

2    *supra*), was already committed:

3            Turning to slide 8, **I want to address investor concerns about Teekay LNG
             and Teekay Offshore, needing to raise significant equity capital** at today's
4            depressed unit prices to support built-in growth. In fact, as we said on their
             respective earnings calls, this is not the case. Our CapEx financing is well on
5            track and **we're not as reliant upon raising equity capital at today's depressed
             unit prices than some might think**.
6
             In the table on this slide, we've laid out our remaining capital expenditure
7            requirements for our existing growth projects at Teekay LNG and Teekay
             Offshore, along with the related committed or anticipated debt financing. As you
8            can see from the table, **the majority of the remaining capital expenditure is
             able to be funded with attractively-priced debt financing**.
9
             While not all of our required debt financing is currently in place, this is normal.
10           With our CapEx spread out over multiple years and typically back-end weighted,
             such that the bulk of the capital expenditure is made just prior to delivery. And **we
11           generally secure debt financing closer to vessel delivery to minimize banking
             fees.**
12
13           129.   Evensen then went on and explicitly linked the access to debt financing to

14   continued growth in dividends:

15           With Teekay Parent's new dividend linked to the growth of dividends at our
             underlying daughter businesses, **the ability of our daughters to access
16           competitively-priced bank financing and multiple capital markets, in turn,
             supports our ability to achieve Teekay Parent's targeted dividend growth of
17           15% to 20% per year.**

18           130.   The foregoing statements in ¶¶ 126-129 were materially false and misleading

19   because, as set forth in detail above at ¶¶ 116, 119, 122 and 125, Defendants knew, as Teekay

20   ultimately acknowledged on December 16, 2015, that neither Teekay nor its subsidiaries, TOO

21   and TGP, would be able obtain sufficient financing from external sources to fund TGP's and

22   TOO's existing, fully contracted growth projects.  As a result, TGP and TOO would need to

23   retain the cash distributions ordinarily paid to Teekay (which Teekay had told investors it was

24   going to use to pay its dividends to its shareholders) in order to internally fund those growth

25   projects.  Thus, the statements that Teekay, TGP and TOO had access to sufficient external

26   sources of funding from "bank[s]" and "multiple capital markets" to pay for both subsidiaries'

27

28   growth projects were materially false and misleading, as were the highly significant and material

AMENDED CLASS ACTION COMPLAINT - 43
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

statements that Teekay could maintain its current dividend and increase that dividend 15-20%

over the next three years.

131.    Because they could not know the misleading nature of Defendants' statements,

analysts reported that Teekay's "distribution growth story [was] still intact," while further

echoing Defendants' statements touting Teekay's future dividend increases based on TGP's and

TOO's growth projects:

> **Time To Buy**... TK is yielding ~6.4% (following the *Knarr* dropdown) which boosted the distribution to $0.55 (~75% increase). **More importantly management reiterated its *15-20% distribution growth target for the next three years* and has the assets to do it**. Near term **we expect TOO (FPSOs delivering 2016-2017) to drive cash flow growth and medium term TGP will carry the baton with 29 newbuilds** (21 LNG/8 LPG). While the offshore energy patch is in the midst of a cyclical down-cycle – **longer term we like the growth prospects for TOO's FPSO, FSO, shipping assets.**

Moreover, Defendants' scheme to use TOO's and TGP's growth projects to reassure investors

that Teekay's future was prominent despite the economic downturn in the industry proved

successful, as at least one analyst stated:

> TK is down 30%+ over the last 3 months significantly underperforming the Alerian MLP Index (down 16% over the same period). **Given TKs contracted backlog, multi-daughter strategy (TOO and TGP), and growth pipeline we believe the underperformance is unwarranted**. TK has traded down with its daughters TOO (down 26% and TGP (down 38%) – **given TKs GP position this seems overblown.**

**6.    November 6, 2015 Earnings Call and Earnings Presentation**

132.    Defendants largely repeated their prior statements regarding the sustainability of

and growth in Teekay's dividend payments during Teekay's November 6, 2015 earnings call and

presentation to investors:

> The dropdown allowed us to increase Teekay Parent's dividend by approximately 75% to $0.55 per share which equates to an annualized rate of $2.20 per share in the second quarter of 2015 …. Teekay Parent's new dividend policy that was implemented in the second quarter **linked future dividend increases to the growing dividend cash flows we received from our daughter entities**. **With a robust pipeline of approximately $6.2 billion of *current known* growth projects at our daughter entities *stretching to 2020,*** and additional growth projects that our daughter entities are pursuing, we are targeting Teekay's

1   dividend to *further grow by an average of 15% to 20% per annum for at least*
2   *the next three years*.

3       133.    Defendants also, as they had for the prior three months, reassured investors that

4   Teekay would be able to further increase its dividend based on TGP's and TOO's growth

5   projects and present ability to obtain external financing to fund them:

6           Teekay Offshore continues to secure long-term debt financing for its portfolio of
        growth projects with the recent completion of a new $185 million long-term debt
7           facility to finance the four state of the art long distance towing and offshore
        installation vessel new buildings currently under construction which are
8           scheduled for delivery throughout 2016. Lastly, *we continue to have access to*
        *competitive bank financing and multiple capital markets* including our *recent*
9           *signing* of a $1 billion framework cooperation agreement with the export
        import bank of China to finance the construction or conversion of vessels
10          from shipyards in China over the next three years. Along with our MLPs
        *securing* over $1.1 billion of long-term debt or lease financing to fund a
11          portion of their remaining capital commitments.

12      134.    Defendants reiterated these statements in Teekay's November 6, 2015 earnings

13  presentation:

14          •  On July 1st, completed the dropdown sale of the *Knarr* FPSO to
15             Teekay Offshore for $1.26 billion
              ○  Increased dividend by 75% to $0.55 per share in Q2-15 ($2.20
16                per share annualized)
              ○  Reduced Teekay Parent's net debt by approximately $900
17                million
           •  **Targeting average of 15 to 20% annual dividend growth over next**
18             **three years**
           •  Financial flexibility
19             ○  *Continued access to diverse sources of capital*

20      135.    Notably, during Teekay's November 6 earnings call, an analyst from Morgan

21  Stanley asked how Teekay would be able to increase its dividend by 20% each year for the next

22  three years, and what role, if any, TGP's and TOO's ability to externally finance their growth

23  projects played in the dividend increases:

24          You mentioned 20%. How can this be achieved? Is it because this 20% is based
25          on projects that have *already been done* or because of the **higher debt financing**
           **that you are planning to get on your projects**?

26

27

28



In response, Defendants stressed that Teekay would be able to increase its dividend 15-20% because TGP and TOO already had, at that time, enough external financing and growth projects to justify the increase.  Evensen stated:

> We *already have* enough growth in the book for the next three years, 2016, 2017 and 2018. **We have growth all the way out to 2020,** *so that is why we can have that target*. So, that is what is connected to our target of 15% to 20% in the GP or Teekay Parent dividend based on the known growth that we have at MLP.

136.     The foregoing statements in ¶¶ 132-135 were materially false and misleading because, as set forth in detail above at ¶¶ 116, 119, 122, 125 and 130, Defendants knew, as Teekay ultimately acknowledged on December 16, 2015, that neither Teekay nor its subsidiaries, TOO and TGP, would be able obtain sufficient financing from external sources to fund TGP's and TOO's existing, fully contracted growth projects.  As a result, TGP and TOO would need to retain the cash distributions ordinarily paid to Teekay (which Teekay had told investors it was going to use to pay its dividends to its shareholders) in order to internally fund those growth projects.  Thus, the statements that Teekay, TGP, and TOO had access to sufficient external sources of funding from "bank[s]" and "multiple capital markets" to pay for both subsidiaries' growth projects were materially false and misleading, as were the highly significant and material statements that Teekay could maintain its current dividend and increase that dividend 15-20% over the next three years.

137.     Once again, ignorant of the misleading nature of the information that was being presented, analysts reacted favorably to Defendants' statements, issuing "buy" ratings for Teekay common stock and commenting: "Net/net we hope for a positive reaction to these results, with focus on nice inflection in GP cash flow and very strong dividend coverage."  Defendants' attempts to distinguish Teekay from the surrounding ailing energy industry—by touting then-present facts that TGP's and TOO's future growth projects were already externally financed at that time—were successful as analysts echoed their statements:

AMENDED CLASS ACTION COMPLAINT - 46
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

As part of their revised growth strategy both TGP and TOO are raising their hurdle rates for new projects given higher costs of capital and the current MLP market, **although we highlight that TK *already has* enough identified growth in place ($8.1B of forward revenue growth) to support its forward dividend guidance of 15-20% through 2018**.

**7.      RBC MLP Conference November 18, 2015**

138.     Days later, on November 18, 2015, during the RBC MLP Conference November 2015, Defendants repeated their same mantra on TGP's and TOO's access to external financing and the sustainability and growth of the Teekay dividend payments to shareholders:

> New Dividend Policy **Targeting 15- 20% growth per annum**
> - Implemented new dividend policy in Q2-15, with an initial dividend increase of ~75% to $0.55 per share, or $2.20 per share (annualized)
> - Future increases linked to the growth in the dividend cash flows we receive from our daughter entities
> - **Targeting 15 – 20% annual dividend growth over the next three years**
>   - Supported by $6.2 billion of profitable growth projects and a contract portfolio of over $20 billion in forward revenues
> - Financial flexibility
>   - ***Continued access to diverse sources of capital***

139.     The foregoing statements in ¶ 138 were materially false and misleading because, as set forth in detail above at ¶¶ 116, 119, 122, 125, 130 and 136, Defendants knew, as Teekay ultimately acknowledged on December 16, 2015, that neither Teekay nor its subsidiaries, TOO and TGP, would be able obtain sufficient financing from external sources to fund TGP's and TOO's existing, fully contracted growth projects.  As a result, TGP and TOO would need to retain the cash distributions ordinarily paid to Teekay (which Teekay had told investors it was going to use to pay its dividends to its shareholders) in order to internally fund those growth projects.  Thus, the statements that Teekay, TGP and TOO had access to sufficient external sources of funding from "continued access to diverse sources of capital" to pay for both subsidiaries' growth projects were materially false and misleading, as were the highly significant and material statements that Teekay could maintain its current dividend and increase that dividend 15-20% each year over the next three years.



1

**G.      Scienter Allegations**

2

        140.    As alleged above, Defendants Teekay, Evensen, and Lok acted with scienter in

3

that they:  (i) knew or recklessly disregarded that the statements identified above in ¶¶ 110-139

4

were materially false and misleading when made; (ii) knew or recklessly disregarded that such

5

statements would be issued or disseminated to the investing public; (iii) knowingly and

6

substantially participated or acquiesced in the issuance or dissemination of such statements or

7

documents; and/or (iv) knowingly or recklessly engaged in the fraudulent scheme alleged herein

8

as primary violators of the federal securities laws.  Defendants, by virtue of their receipt of

9

information reflecting the true facts regarding Teekay's increased dividend, TGP's and TOO's

10

growth projects, TGP's and TOO's ability to obtain financing to fund their growth projects, the

11

macroeconomic decline in the energy industry, and their control over and receipt or modification

12

of Teekay's materially false and misleading statements, actively participated in the fraudulent

13

scheme alleged herein.

14

        141.    ***First***, the Individual Defendants, as Teekay's executive officers and/or directors,

15

controlled the contents of the Company's SEC filings and other public statements during the

16

Class Period.  Each was provided with, or had access to, copies of the documents alleged herein

17

to be false or misleading prior to, or shortly after, their issuance, and had the ability and

18

opportunity to prevent their issuance.  By virtue of their respective positions and access to

19

material non-public information regarding the Company, each knew or recklessly disregarded

20

that the adverse facts alleged herein concerning the Company's increased dividend, TGP's and

21

TOO's growth projects, and inability to obtain external financing to fund their growth projects

22

had not been disclosed to and were being concealed from the public, and that the positive

23

representations that were being made were materially false, misleading, and incomplete.  As a

24

result, the Individual Defendants were responsible for the accuracy of Teekay's public

25

26

27

28

AMENDED CLASS ACTION COMPLAINT - 48
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

statements and SEC filings, and were therefore responsible and liable for the representations contained therein or omitted therefrom.

142.   **Second**, Teekay and the Individual Defendants were financially motivated to conceal that the Company would have to slash its dividends because TGP and TOO could not obtain sufficient external financing to fund growth projects due to the economic downturn in the energy industry.  With no alternative means of externally financing significant portions of TGP's and TOO's growth projects, Defendants knew at the time that they made the false statements alleged herein that Teekay could not maintain its current level of dividend payments, much less further increase its dividends by 15-20% each year for the next three years, because TGP and TOO would need to retain the cash distributions that formed the bases for Teekay's increased dividends to fund the externally-financed portions of TGP's and TOO's growth projects rather than passing that cash up to Teekay to pay Teekay's increased dividend.  Because revealing these facts to investors would have only further collapsed the price of Teekay's stock, as well as negatively impacted its bond rating, Defendants had a clear incentive to artificially inflate this price so that the Company could continue to distinguish itself in the eyes of its investors from the surrounding economic downturn in the energy industry.

143.   **Third**, the fact that Teekay's increased dividend plan and TGP's and TOO's ability to obtain external financing to fund their growth projects directly involved Teekay's core business operations—i.e., the continued acquisition of additional assets to generate increased revenue streams to support Teekay's increased dividend—further supports a strong inference that Teekay and the Individual Defendants acted with scienter.  Indeed, the Company expressly acknowledged in its public SEC filings and other public statements that its increased dividend plan was "**driven** by its $6.3B pipeline of **growth projects at TOO and TGP**."  Because the false statements alleged herein specifically touted Teekay's promise to further increase its

AMENDED CLASS ACTION COMPLAINT - 49
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  dividend by 15-20% based on TGP's and TOO's ability to externally finance their growth

2  projects, Teekay and the Individual Defendants knowingly and/or recklessly issued the

3  materially false and misleading statements alleged herein.

4  144.   Defendants' knowledge that their statements regarding their ability to rely on

5  external financing, rather the utilizing internal sources that would preclude their ability to pay

6  dividends going forward at current and/or increased levels, is demonstrated by the following

7  facts, all of which are set forth in detail above:

- From at least the beginning of the Class Period, the energy industry was in a severe slump because of the massive decline in oil prices, which had caused substantial declines in the price of Teekay's stock, as well as virtually all other energy companies.  *See, e.g.*, ¶¶ 68-72, *supra*.

- As a result of the reduced value of Teekay's stock, its ability to issue additional units to the public—its traditional means (as was the case with virtually all MLPs) of raising equity capital—was too expensive or dilutive because the current share price was well below the long-term value of Teekay's assets.  These facts were well known to Teekay, investors and analysts and thus analysts continuously asked about Teekay's ability to externally finance its growth projects and were continuously reassured by Defendants that Teekay had access to "attractively-priced debt financing" from "bank[s]" and "multiple capital markets."  *See, e.g.*, ¶ 54, *supra*.

- Defendants continuously reiterated, through as late as November 18, 2015, their statements about Teekay's access to sufficient external financing to support growth and concomitant ability to maintain and increase Teekay's dividend payments by 15-20% annually for the next three years.  *See, e.g.*, ¶¶ 110-139, *supra*.

- Teekay's credit rating with key debt ratings agencies was maintained throughout the Class Period and thus, from a rating perspective, its ability to obtain debt did not change during the Class Period.  *See, e.g.*, ¶ 66, *supra*.

- Thus, nothing occurred between June and December 2015 that would materially impact Teekay's ability to access equity and debt financing, as the problems in obtaining equity financing were well understood prior to June 2015, and no issues in the debt market were raised during the Class Period.

- As a result, Defendants' announcement on December 16, 2015, that Teekay would have to reduce dividends because its subsidiaries needed to *internally* finance growth (*see* ¶¶ 100-109, *supra*) set forth facts that had been known to Defendants since at least the beginning of the Class Period, but which were withheld from investors and the public.

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1

## V.    LOSS CAUSATION

2       145.    As alleged herein, Defendants' false statements, material omissions, and

3 fraudulent course of conduct directly and proximately caused Teekay's common stock to trade at

4 artificially inflated prices during the Class Period.  Specifically, Defendants' representations and

5 omissions regarding, *inter alia*, TGP's and TOO's ability to obtain additional financing, maintain

6 the increased dividend, and present statements of its ability to increase its dividend by 15-20%

7 each year for the next three years caused and/or maintained the artificial inflation in Teekay's

8 stock price during the Class Period.  Relying on the integrity of the market price for Teekay

9 common stock and public information relating to Teekay, Lead Plaintiff and other Class

10 members purchased or otherwise acquired Teekay common stock at prices that incorporated and

11 reflected Defendants' misrepresentations and omissions of material fact alleged herein.  As a

12 result of their purchases of Teekay common stock during the Class Period at artificially inflated

13 prices, Lead Plaintiff and the Class suffered economic loss, i.e., damages under the federal

14 securities laws.

15       146.    Defendants' false and misleading statements, material omissions, and course of

16 conduct had their intended effect, directly and proximately causing Teekay common stock to

17 trade at artificially inflated prices during the Class Period, including as high as $51.39 per share

18 on April 15, 2015.  Those misrepresentations and omissions of material fact that were not

19 immediately followed by an upward movement in the price of Teekay common stock served to

20 maintain the price of Teekay common stock at an artificially inflated level.

21       147.    Had Defendants been truthful about these matters during the Class Period, Lead

22 Plaintiff and other Class members would not have purchased or otherwise acquired their shares

23 of Teekay stock at the artificially inflated prices at which they traded.  It was entirely foreseeable

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1   to the Defendants that misrepresenting and concealing these material facts from the public would

2   artificially inflate the price of Teekay common stock.

3         148.    The artificial inflation in Teekay common stock prices was removed through at

4   least one corrective disclosure on December 16, 2015, which revealed the relevant truth

5   regarding adverse facts and/or known risks previously concealed and/or obscured by Defendants'

6   material misstatements and omissions, including, *inter alia*: (i) that TGP and TOO would not be

7   able to sufficiently finance existing and known committed growth projects through external

8   sources; (ii) that, because of the absence of external funding, TGP and TOO were forced to

9   reduce their quarterly cash distribution amounts because both MLPs needed to retain the cash

10   distributions to fund future growth; (iii) that this reduction in TGP's and TOO's distributions

11   directly impacted Teekay's ability to maintain its increased dividend plan; (iv) that, as a result,

12   Teekay would not increase its dividend 15-20% each year for the next three years; and (v) the

13   further materialization of concealed risks relating to those material issues.

14         149.    As a direct and proximate result of the substantial revelation of previously

15   misrepresented and concealed information relating to Defendants' misstatements and omissions,

16   the price of Teekay common stock declined by $10.22 per share, or roughly 58%, from a close of

17   $17.49 on the prior trading day (December 16, 2015), to close at $7.27 per share on December

18   17, 2015, on extraordinarily heavy trading volume (nearly 30 million shares).  As set forth above

19   in ¶¶ 100-109, numerous analysts issued reports expressing surprise over the new information

20   revealed on December 16, 2015.  These disclosures, more fully described above in ¶¶ 100-109,

21   removed artificial inflation from the price of Teekay's publicly traded common stock, causing

22   economic injury to Lead Plaintiff and other members of the Class.  This artificial inflation was

23   removed from Teekay's stock price.

AMENDED CLASS ACTION COMPLAINT - 52
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

150.     It was foreseeable that the ultimate disclosure of this information, and/or the materialization of the risks concealed by Defendants' material misstatements and omissions, would cause the price of Teekay common stock to decline, as the inflation caused by Defendants' earlier materially false and misleading statements and omissions of material fact was removed from the stock price.  Moreover, the timing and magnitude of Teekay's stock price decline negates any inference that the losses suffered by Lead Plaintiff and the other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or other Company-specific facts unrelated to the Defendants' fraudulent conduct.

151.     Accordingly, Defendants' misrepresentations, omissions, and fraudulent course of conduct, as alleged herein, proximately caused foreseeable losses to Lead Plaintiff and the other members of the Class who purchased or otherwise acquired Teekay's common stock during the Class Period.

152.     The damages suffered by Lead Plaintiff and the other Class members directly resulted from Defendants' materially false and misleading statements and omissions of material fact, which artificially inflated the price of the Company's common stock, and the subsequent significant decline in the value of the Company's common stock when the relevant truth was revealed and/or the risks previously concealed by Defendants' material misstatements and omissions materialized.

153.     As a result of the previously misrepresented and concealed material information and undisclosed risk revealed on December 16, 2016, and the corresponding substantial decline in the price of Teekay common stock when the market learned of the information, Lead Plaintiff and other Class members have suffered economic loss.



## VI.   LEAD PLAINTIFF AND THE CLASS ARE ENTITLED TO A PRESUMPTION OF RELIANCE

154.   At all relevant times, the market for Teekay common stock was an open and efficient market for the following reasons, among others:

a)   Teekay's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient electronic stock market that is presumed efficient, *see*, *e.g.*, *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 489 n.3 (S.D.N.Y. 2011) ("[T]he NYSE is a paradigmatic efficient market"); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 119 (S.D.N.Y. 2008) (citations omitted) ("if 'a security is listed on the NYSE … or a similar national market, the market for that security is presumed to be efficient.'");

b)   As a registered and regulated issuer of securities, Teekay filed periodic public reports with the SEC, in addition to the Company's frequent voluntary dissemination of information;

c)   Teekay regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d)   Teekay was followed by securities analysts employed by major brokerage firms who wrote reports that were publicly available and entered the public marketplace;

e)   The material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of Teekay stock; and



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

f)      Without knowledge of the misrepresented or omitted facts, Lead Plaintiff and the other members of the Class purchased or otherwise acquired Teekay stock between the time that the Defendants made the material misrepresentations and omissions and the time that the relevant truth was revealed, during which time the price of Teekay stock was artificially inflated by Defendants' misrepresentations and omissions.

155.    As a result of the foregoing, the market for Teekay common stock promptly digested current information regarding Teekay from all publicly available sources, and the prices of Teekay's stock reflected such information.  Based upon the materially false and misleading statements and omissions of material fact alleged herein, Teekay common stock traded at artificially inflated prices during the Class Period.  Lead Plaintiff and the other members of the Class purchased Teekay's stock relying upon the integrity of the market price of Teekay common stock and other market information relating to Teekay.

156.    Under these circumstances, all purchasers of Teekay common stock during the Class Period suffered similar injuries through their purchases at artificially inflated prices, and a presumption of reliance applies.

157.    Further, at all relevant times, Lead Plaintiff and other members of the Class reasonably relied upon Defendants to disclose material information as required by law and in the Company's SEC filings.  Lead Plaintiff and the other members of the Class would not have purchased or otherwise acquired Teekay common stock at artificially inflated prices if Defendants had disclosed all material information as required.  Thus, to the extent that Defendants concealed or improperly failed to disclose material facts concerning the Company and its operations, Lead Plaintiff and the other members are entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972).

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1

2

## VII.    THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE ARE INAPPLICABLE

3        158.    The PSLRA's statutory safe harbor and/or bespeaks caution doctrine generally

4    applicable to forward-looking statements ("FLS") under certain circumstances do not apply to

5    any of the untrue and misleading statements pleaded in this Complaint.

6        159.    The materially false and/or misleading statements and omissions alleged herein:

7    (i) were not FLS; (ii) contained present and historical factual statements; (iii) were not

8    appropriately identified as "forward-looking statements" when made; and/or (iv) were not

9    accompanied by meaningful cautionary language.  For example, certain misrepresentations were

10   and/or contained historical and present-tense statements about Teekay's *current* ability to further

11   increase its dividend by 15-20% based on TGP's and TOO's *then-present* ability to access

12   multiple capital markets and bank financing to fund their *existing* and *known committed* growth

13   projects.  The company-specific impact the economic downturn in the energy industry and

14   undesirable equity market for Teekay stock were having on Teekay's ability to further increase

15   its dividend and TGP's and TOO's inability to finance growth projects using external sources

16   were actually known by or were readily available to Defendants at the time of their statements,

17

18   but were deliberately concealed from investors.

19       160.    None of the statements that form the bases for liability, as complained of herein,

20   were forward-looking statements.  Rather, they were historical statements or statements of

21   purportedly current facts and conditions at the time the statements were made, including

22   statements about TGP's and TOO's then-present ability to obtain sufficient financing from

23   external sources to fund their growth projects that generated revenue that was then passed

24   through to Teekay and formed the basis for Teekay to maintain its increased dividend plan and

25

26   continue to increase its quarterly dividends by 15-20% each year for the next three years.

27

28



HB    HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

161.     To the extent that any materially false and/or misleading statement alleged herein, or any portion thereof, can be construed as forward-looking, each such statement was not accompanied by specific, meaningful cautionary language identifying important factors that could cause actual results to differ materially from FLS.  Specifically, Defendants failed to include any similar, specific, and meaningful risk warnings identifying important factors that could cause TGP and TOO to not have access to sufficient financing to fund their growth projects prior to making the false and misleading statements.  Rather, Defendants' risk warnings in the Company's relevant SEC filings and conference calls failed to include any such specific warnings regarding the true, substantial impact the macroeconomic downturn in the energy industry had on Teekay and its subsidiaries, which was well known to Defendants prior to the first alleged false and misleading statement.  Indeed, Defendants did the exact opposite by repeatedly reassuring investors that the one factor that inevitably caused Teekay to slash its dividend—the unfavorable equity market for energy stocks such as Teekay—would not impact TGP's and TOO's ability to externally finance their existing and known committed growth projects or, in turn, Teekay's increased dividend.

162.     Moreover, Teekay's generalized statutory safe harbor warnings, to the extent there were any, were boilerplate and did not change to reflect changes in the economic and business conditions under which Teekay operated.  Defendants' risk warnings did not include the known and important risks facing Teekay at the time of their Class Period statements regarding TGP's and TOO's ability to externally finance growth projects and how fluctuations in their ability to do so would impact Teekay's ability to further increase its dividends by 15-20% for the following three years.  As set forth above in detail, then-existing facts contradicted Defendants' statements regarding TGP's and TOO's access to external sources of financing.  Given the then-existing facts contradicting Defendants' statements, the boilerplate, generalized risk disclosures

AMENDED CLASS ACTION COMPLAINT - 57
Case No. 2:16-cv-01908-JLR
010659-11 929492 V1

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   made by Defendants were not sufficient to insulate Defendants from liability for their materially

2   false and misleading statements.

3       163.    For example, despite the fact that Defendants knew long before their first false

4   statement in June 2015 that the economic downturn in the energy industry was having a

5   detrimental effect on the equity capital market for energy MLPs such as TGP and TOO,

6   Defendants repeatedly assured investors that TGP's and TOO's growth projects would not be

7   affected and that both subsidiaries had access to multiple external sources of financing, such as

8   "multiple capital markets" and "bank financing" to fund such growth projects so that the

9   unfavorable equity market did not affect them.  Similarly, Defendants failed to disclose that TGP

10  and TOO did not have access to sufficient external sources of financing, and therefore TGP and

11  TOO would need to retain their cash distributions to fund the equity-financed portions of their

12  growth projects and, in turn, Teekay would not be able to further increase its dividends by 15-

13  20% each year for the next three years.

14      164.    Alternatively, Defendants are liable for any false and/or misleading FLS because,

15  as set forth in § IV.G., above, at the time each of those FLS was made, Defendants knew that the

16  FLS was false, or had no reasonable basis, or was contradicted by adverse facts known to

17  Defendants, and therefore was false or misleading, and the FLS was authorized and/or approved

18  by an executive officer of Teekay who knew the FLS was false or misleading when made.

## VIII.   CLASS ACTION ALLEGATIONS

165.    Lead Plaintiff brings this action as a class action pursuant to Federal Rules of

Civil Procedure 23(a) and 23(b)(3) on behalf of itself and all those who purchased Teekay

common stock during the Class Period.  Excluded from the Class are Defendants, members of

Defendants' immediate families, any person, firm, trust, corporation, officer, director, or other

individual or entity in which any Defendant has a controlling interest, or which is related to or

AMENDED CLASS ACTION COMPLAINT - 58
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1   affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs,

2   successors-in-interest, or assigns of any such excluded party.

3       166.    The members of the Class are so numerous and geographically dispersed that

4   joinder of all members is impracticable.  As of December 31, 2015, only two weeks after the end

5   of the Class Period, approximately 72.7 million shares of Teekay common stock were

6   outstanding and actively traded on the NYSE.  The precise number of Class members is

7   unknown to Lead Plaintiff at this time, but is believed to be in the thousands.  In addition, the

8   names and addresses of the Class members can be ascertained from the books and records of

9   Teekay or its transfer agent.  Notice can be provided to such record owners by a combination of

10  published notice and first-class mail, using techniques and a form of notice similar to those

11  customarily used in class actions arising under the federal securities laws.

12      167.    Lead Plaintiff will fairly and adequately represent and protect the interests of the

13  other members of the Class.  Lead Plaintiff has retained competent counsel experienced in class

14  action litigation under the federal securities laws to further ensure such protection and intends to

15  prosecute this action vigorously.

16      168.    Lead Plaintiff's claims are typical of the claims of all other members of the Class

17  because Lead Plaintiff's and all of the other Class members' claims arise from, and their losses

18  were caused by, the same false and misleading representations and omissions made by, or

19  chargeable to, Defendants.  Lead Plaintiff does not have any interests antagonistic to, or in

20  conflict with, the Class.

21      169.    A class action is superior to other available methods for the fair and efficient

22  adjudication of this controversy.  Since the damages suffered by individual Class members may

23  be relatively small, the expense and burden of individual litigation make it virtually impossible

24  for Class members to seek redress for the wrongful conduct alleged herein.  Lead Plaintiff knows

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

170.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to members of the Class are:

a)      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b)      whether Defendants' statements and omissions issued during the Class Period were materially false and misleading;

c)      whether and to what extent the market price of Teekay common stock was artificially inflated and/or distorted before and/or during the Class Period due to the misrepresentations and/or omissions of material fact complained of herein;

d)      whether the Defendants named under Section 10(b) of the Exchange Act acted with scienter; and

e)      the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## IX.    CAUSES OF ACTION

### COUNT I

**VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS**

171.    Lead Plaintiff incorporates by reference and realleges all preceding paragraphs as if fully set forth herein.  This claim under Section 10(b) of the Exchange Act, 15 U.S.C. § 78(j)(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, is asserted by Lead Plaintiff on behalf of itself and all other Class members against Defendants Teekay, Evensen, and Lok.

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

172.    During the Class Period, Defendants used the means and instrumentalities of interstate commerce, the U.S. mails, and the facilities of the national securities exchanges to make materially false and misleading statements and omissions of material fact alleged herein to: (i) deceive the investing public, including Lead Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Teekay common stock; and (iii) cause Lead Plaintiff and the other members of the Class to purchase Teekay common stock at artificially inflated prices that did not reflect their true value.  In furtherance of their unlawful course of conduct, the Individual Defendants took actions set forth herein.

173.    While in possession of material adverse, non-public information, the Individual Defendants, individually and in concert, directly or indirectly, by the use of means and instrumentalities of interstate commerce, the U.S. mails, and the facilities of a national securities exchange:

a.      employed devices, schemes, and artifices to defraud;

b.      made false and misleading statements of material fact and/or failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c.      engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the purchasers of the Company's common stock, including Lead Plaintiff and the Class members, in an effort to maintain artificially high market prices for Teekay common stock, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

174.    Defendants are alleged as primary participants in the wrongful conduct alleged herein.

AMENDED CLASS ACTION COMPLAINT - 61
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

175.     By virtue of their high-level positions at the Company during the Class Period, the Individual Defendants were authorized to make public statements, and made public statements during the Class Period on Teekay's behalf.  The Individual Defendants were privy to and participated in the creation, development, and issuance of the materially false and misleading statements and omissions alleged herein, and/or were aware of the Company's and their own dissemination of information to the investing public that they recklessly disregarded was materially false and misleading.

176.     In addition to the duties of full disclosure imposed on Defendants as a result of their making affirmative statements and reports to the investing public, Defendants had a duty to disclose information required to update and/or correct their prior statements and/or omissions, and to update any statements or omissions that had become false and misleading as a result of intervening events.  Defendants Lok and Evensen also had duties under the Sarbanes-Oxley Act of 2002 to ensure that Teekay's forms filed with the SEC did not misrepresent or omit any material facts.

177.     Defendants acted with knowledge or a reckless disregard for the truth of the misrepresented and omitted facts alleged herein, in that they failed to ascertain and to disclose such facts, even though such facts were known or readily available to them. Defendants' material misrepresentations and omissions were done knowingly and/or recklessly, and had the effect of concealing the truth with respect to Teekay's operations, business, performance, and prospects from the investing public and supporting the artificially inflated price of its common stock.

178.     The dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, artificially inflated or maintained artificial inflation already in the market price of Teekay's common stock during the Class Period.  In ignorance of the fact that the market prices of Teekay common stock was artificially inflated, and relying



1
2
3
4
5
6
7

directly or indirectly upon the materially false and misleading statements made by Defendants, and upon the absence of material adverse information that was recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Lead Plaintiff and the other members of the Class purchased Teekay common stock during the Class Period at artificially inflated prices.  As the relevant truth eventually emerged, the price of Teekay common stock substantially declined.

8
9
10
11
12
13
14

179.    At the time of the material misrepresentations and omissions alleged herein, Lead Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true.  Had Lead Plaintiff and the other members of the Class and the marketplace known the relevant truth with respect to Teekay's financial results, operations, business, and prospectus, which was concealed by Defendants, Lead Plaintiff and the other members of the Class would not have done so at artificially inflated prices that they paid.

15
16

180.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

17
18
19

181.    As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiff and the other Class members suffered damages in connection with their transactions in the Company's common stock during the Class Period.

20
21
22

## COUNT II

### VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
### AGAINST THE INDIVIDUAL DEFENDANTS

23
24
25
26
27

182.    Lead Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against the Individual Defendants pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), by Lead Plaintiff on behalf of itself and all other Class members.

28

AMENDED CLASS ACTION COMPLAINT - 63
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

183.    During the Class Period, each of the Individual Defendants was a senior executive officer and/or director of the Company.  As such, each of these Defendants was privy to confidential and proprietary information concerning Teekay and its business, operations, performance, and future prospects, including its compliance with applicable federal, state, and local laws and regulations.

184.    Defendant Lok has served as the Company's CFO from 2007 until the present, and also served as a director of Teekay GP L.L.C., which controlled the day-to-day operations of TGP.  Defendant Evensen served as the Company's CEO from 2003 until the present, and also served as CEO and CFO of Teekay GP L.L.C., which controlled the day-to-day operations of TGP, as well as CEO, CFO, and Director of Teekay Offshore GP L.L.C., which controlled the day to day operations of TOO.  As such, the Individual Defendants had regular access to non-public information about Teekay, TOO, and TGP's business, operations, performance, and future prospects through access to internal corporate documents and information, conversations, and connections with other corporate officers and employees, attendance at management meetings and meetings of the Company's Board and committees thereof, as well as reports and other information provided to them in connection therewith.

185.    The Individual Defendants acted as controlling persons of Teekay, TGP, and TOO within the meaning of § 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Companies' day-to-day operations and finances, and/or knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power and authority to influence and control, and did influence and control, directly or indirectly, the day-to-day decision-making of the Company, including Teekay's wrongful conduct in violation of the Exchange Act complained of herein.

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

186.    Each Individual Defendant was provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings, and other statements alleged by Lead Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability and ultimate authority to prevent the issuance of the statements or cause the statements to be corrected.

187.    In particular, each Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had, or are presumed to have had, the power to control or influence the particular public statements or omissions giving rise to the securities violations as alleged herein, and exercised the same.

188.    As set forth above, Defendant Teekay violated Section 10(b) and Rule 10b-5 by its acts and omissions as alleged in this Complaint.  By virtue of the Individual Defendants' status as controlling persons, and their respective participation in the underlying violation of Section 10(b) and Rule 10b-5, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' wrongful conduct, Lead Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiff, on behalf of itself and the other members of the Class, prays for relief and judgment, including:

A.    Determining this action to be a proper class action under Federal Rule of Civil Procedure 23, certifying Lead Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure, and certifying Lead Plaintiff's counsel as Lead and Liaison Counsel for the Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Lead Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  Defendants' wrongdoing, in an amount to be determined at trial, including pre-judgment and

2  post-judgment interest, as allowed by law;

3       C.      Awarding Lead Plaintiff and the other members of the Class their costs and

4  expenses incurred in this action, including reasonable counsel fees and expert fees; and

5       D.      Awarding such other and further relief as may be just and proper.

6  <div align="center">**JURY TRIAL DEMANDED**</div>

7      Lead Plaintiff hereby demands a trial by jury on all triable claims.

8  Dated: January 13, 2017

**KESSLER TOPAZ MELTZER & CHECK, LLP**

/s/*Geoffrey C. Jarvis*
Geoffrey C. Jarvis (*pro hac vice*)
Daniel C. Mulveny (*pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056
gjarvis@ktmc.com
dmulveny@ktmc.com

*Lead Counsel for Lead Plaintiff*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

/s/  *Steve W. Berman*
Steve Berman, No. 12536
1918 8th Ave, #3300
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

*Liaison Counsel for the Class*

AMENDED CLASS ACTION COMPLAINT - 66
Case No. 2:16-cv-01908-JLR
010659-11  929492 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594