UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAEVE INVESTMENT COMPANY LTD. PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>TEEKAY CORP., et al.,<br><br>Defendants. | CASE NO. C16-1908 MJP<br><br>ORDER ON MOTION TO DISMISS AMENDED COMPLAINT |

The above-entitled Court, having received and reviewed:

1. Defendants' Motion to Dismiss Amended Class Action Complaint (Dkt. No. 75);

2. Defendants' Request for Judicial Notice (Dkt. No. 77);

3. Plaintiff's Opposition to Defendants' Motion to Dismiss Amended Class Action Complaint (Dkt. No. 80);

4. Defendants' Reply in Support of Motion to Dismiss Amended Class Action Complaint (Dkt. No. 84);

all attached declarations, exhibits, and relevant portions of the court records; and having heard oral argument, rules as follows:

IT IS ORDERED that the request for judicial notice is GRANTED.

IT IS FURTHER ORDERED that the motion to dismiss is GRANTED; the amended complaint is DISMISSED with prejudice.

**Background**[1]

Defendant Teekay Corporation ("Teekay") is a provider of international crude oil and gas marine transportation services (¶ 2) whose primary assets are two "daughter companies:" Teekay LNG Partners L.P. ("TGP") and Teekay Offshore Partners L.P. ("TOO"). ¶¶ 61-62. Teekay, as the general partner in the daughter companies, receives cash distributions from them which it passes on to shareholders as dividend payments. ¶¶ 2, 29, 33, 61-62.

The daughter companies have three means of financing capital projects: (1) issuing equity, (2) borrowing from institutions, or (3) utilizing the cash generated by their own operations. ¶ 52. At the outset of the class period in this litigation (February 2015), Teekay identified a backlog of approximately $7 billion in vessel construction and other capital projects. ¶ 83.

In September 2014, Teekay announced the approval of a new dividend policy whereby it planned to increase its annualized cash dividend by approximately 75 to 80 percent above its current rate (¶ 75), and that it expected to further increase its dividend payment by "approximately 20% per annum for the next three years." ¶¶ 76-77. It reiterated that intention in February of 2015, stating that it would implement that plan following the sale of a floating platform to TOO, and anticipated future dividend increases. ¶ 80.

---

[1] All references in this section are to the Amended Class Action Complaint (Dkt. No. 71), unless otherwise noted.

On June 30, 2015, Teekay declared a quarterly cash dividend which reflected the increase it had previously announced, payable on July 31, 2015. ¶¶ 87-88, 117. The company's second quarter earnings announcement on August 6, 2015 stated its target to further increase the dividend, and that intention was repeated on the investors' call the next day. ¶ 89. It was noted that funding on the daughter companies' capital projects was not yet complete, that some equity would have to be raised to that end, and that "the majority of the remaining capital expenditure is able to be funded with attractively-priced debt financing." ¶ 94.

In November 2015, Teekay announced the third quarter financial results, which were then discussed in an investors' call. ¶¶ 132-135. Despite the fact that the value of TGP and TOO shares had been declining steadily since late 2014, on November 15 and 18, 2015 Teekay stated that it was "targeting" future dividend increases over the next three years. ¶¶ 134, 138.

However, on December 16, 2015, Teekay announced that it would reduce its quarterly dividend beginning in the fourth quarter of 2015. ¶ 101. On the investors' call the following day, the company advised that TGP and TOO "require[d] capital to fund their growth" and therefore Teekay intended to "reallocate [the daughter companies' cash distributions] to pay equity installments on committed growth projects." ¶ 103. Teekay's share price plummeted 58% that day. ¶¶ 109, 149.

Plaintiffs have filed a class action lawsuit against Defendants, asserting a fraud claim under § 10(b) of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. § 78j(b) ("§ 10(b)") and Securities and Exchange Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), as well as a claim for control-person liability against Defendants Evensen and Lok, Teekay's President/CEO and CFO, respectively.

## Discussion

### *Request for Judicial Notice*

Defendant submits a number of documents which it argues qualify for judicial notice and consideration alongside Plaintiff's amended complaint. (Dkt. No. 77.) The vast majority of them are documents referenced and/or quoted in the amended complaint itself; the remainder are documents reflecting the historical prices of TGP and TOO stock.

Under Federal Rule of Evidence 201, a court may take judicial notice of a fact that is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Such notice may be taken "at any stage of the proceeding." Fed. R. Evid. 201(d). Accordingly, courts may take judicial notice of historical prices of publicly traded stock when ruling on a motion to dismiss. ScripsAmerica, Inc. v. Ironridge Global LLC, 119 F. Supp. 3d 1213, 1231-32 (C.D. Cal. 2015) (collecting cases).

Any citations to "Decl. of Knowles" or "Knowles Decl." references one of these documents. Plaintiff filed no objection to Defendant's request and the Court will grant it.

### *Motion to Dismiss*

Plaintiff asserts fraud claims against Defendant under §10(b) of the SEA and Rule 10b-5, claiming that Teekay's statements about the ability of TGP and TOO to obtain sufficient financing to fund their growth projects while continuing to pay increased dividends were false and misleading because it was known that they would in fact be unable to obtain such financing and would be forced to retain cash ordinarily distributed as dividends. §20(a) ("control person")

liability is also asserted against Defendant Evensen (Teekay President and CEO) and Defendant Lok (Teekay's CFO).

As these are securities fraud allegations, Plaintiff is of course required to satisfy the heightened pleading standards, not only of FRCP 9(b) ("… a party must state with particularity that circumstances constituting fraud"), but also of the Private Securities Litigation Reform Act ("PSLRA"). The elements of a §10(b) and Rule 10b-5 violation require a plaintiff to plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection… [with] the purchase or sale of a security; (4) reliance…; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008). The PSLRA requires fraud be plead by "specify[ing] each statement alleged to have been misleading," along with "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Defendant moves for dismissal on three grounds. Any one is sufficient to warrant dismissal; the Court finds that Defendant succeeds in establishing all three.

No false statements

Plaintiff divides the allegedly false statements of Defendant into two categories: Dividend Statements (statements related to Teekay's plans to increase dividend payments over a period of time) and Funding Statements (statements regarding the ability of Teekay, TGP and TOO to access financing for their growth projects).

*Dividend statements*

Although Defendant consistently announced its intention to deliver increased dividends as a "target" (a word the Court finds unquestionably aspirational and future-oriented), Plaintiff

argues that the fact that Teekay actually did pay one increased dividend converts its statements from "goals, targets or objectives" to "[e]ither directly or by implication… [an] assur[ance]… that Teekay would continue to pay this increased dividend over the next three years." Response at 18. Plaintiff cites no authority for this assertion, and it defies logic that a one-time payment converts statements regarding the "targeting" of future dividend increases into promises or representations of fact.

Plaintiff maintains that the falsity of the dividend statements must be measured in the "context" of the hyper-focus of the investors on Teekay's ability to increase dividends while funding the capital projects. But fraud must be plead with specificity, not "in context" – Plaintiff is still responsible for pleading the falsity of each specific statement and the manner in which it was false.

Plaintiff cites a case from the Southern District of New York for its argument that the Dividend Statements "effectively guaranteed" that Defendant would continue to pay increased dividends. See In re General Electirc Co. Securities Litigation, 857 F.Supp.2d 367 (S.D.N.Y. 2012; "GE"). But the GE case is quite distinguishable from the case before the Court. The CEO in GE stated that "[y]ou can count on a great dividend," and the company also described the dividend as "safe," "secure," and "protected." (Id. at 380, 387-88.) The GE court held that a statement about a dividend can be actionable "if [it is] worded as [a] guarantee." Every statement of Defendant's described by Plaintiff as a "guarantee" says that Teekay was "targeting" future dividend growth – there is nothing about a promise or guarantee. The Court cannot attribute the certainty that Plaintiff claims to that kind of language, and finds that Plaintiff has failed to adequately plead that any Teekay statement related to dividend payments was false.

*Funding statements*

Plaintiff characterizes Defendant's statements as "continual reassurances… that sufficient funding *was in place* to support the growth projects and the dividend payments" (Response at 13; emphasis supplied), with the attendant implication that agreements had been executed and the funds were in Defendant's possession. But the actual statements which the complaint quotes are that Teekay had "*access* to competitive bank financing" and that "the majority of the remaining capital expenditure is *able to be funded*." (¶¶ 138, 94; emphasis supplied.) Nowhere in the entire complaint does Plaintiff cite a single statement by Defendant that the financing was "in place."

The "falsity" which Plaintiff alleges is that "Defendants knew, as Teekay ultimately acknowledged on December 16, 2015, that neither Teekay nor its subsidiaries TOO and TGP would be able obtain [*sic*] sufficient financing from external sources to fund TGP's and TOO's existing, full contracted growth projects." (¶¶ 116, 119, 122, 125, 130, 136, 139.) However, none of the statements quoted by Plaintiff in its complaint related to the *inability* of Teekay or its subsidiaries to obtain financing; merely (at the point at which it was decided to fund the projects with internally-generated capital) the *inadvisability* of financing through some form of indebtedness, either borrowing money (external financing) or issuing more shares (i.e., "equity financing"). There are no facts alleged that Teekay or its subsidiaries could not obtain the financing (e.g., that no financial institution would loan them money); it is apparent from reviewing Teekay's statements that the company simply thought borrowing money was a bad idea at that point.

Plaintiff asserts that its inference of misrepresentation is supported by the "proximity in time" between the November representation that "we are able to fund our projects" and the December announcement that "we are cutting the dividend payments for cash to fund our projects." *See* Fecht v. The Price Co., 70 F.3d 1078, 1083-84 (9th Cir. 1995)("This shortness of time is circumstantial evidence that the optimistic statements were false when made"; the absence of "an intervening catastrophic event" lends even more weight.) However, a more recent Ninth Circuit case holds that temporal proximity between an allegedly false statement and an alleged correction neither "establishes a strong inference of scienter [nor] contributes strongly to such an inference." City of Dearborn Heights Act 345 P&FRS v. Align Tech., Inc., 856 F.3d 610, 622 (9th Cir. 2017).

Plaintiff's claims regarding the "funding statements" fail to adequately allege either falsity or misrepresentation at a level required by the heightened pleading standard to which they must conform.

Safe harbor protections of PSLRA

In order to promote the ability of businesses to publish information related to "business forecasts and future outlooks and projections" to investors without fear of liability if the predictions did not work out, Congress included in the PSLRA a "safe harbor provision." 15 U.S.C. §78u-5(c)(1)(A)(i). Under that provision, a defendant cannot be held liable for any "forward-looking statement" that is accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement."

A "forward-looking statement" includes "a statement containing a projection of … dividends" and "any statement of the assumptions underlying or relating to" statements of dividend projections. 15 U.S.C. §78u-5(i)(1)(A), (D). Cautionary language is considered "meaningful" if it mentions "important factors that could cause actual results to differ materially;" there is no requirement of "specification of the particular factor that ultimately renders the forward-looking statement incorrect." Gummel v. Hewlett-Packard Co., 905 F.Supp.2d 1052, 1067 (C.D. Cal. 2012).

Not surprisingly, Defendant claims the protection of the safe harbor provision for its statements. Plaintiff argues that neither the "funding statements" nor the "dividend statements" qualify for safe harbor immunity.

Plaintiff argues that the Dividend Statements "effectively guaranteed the current level of the dividend, as well as guaranteeing a level of growth" (Response at 22-23), again relying on the GE case. The Court finds no such guarantee in the language of Defendant which is quoted in Plaintiff's amended complaint. Teekay's consistent use of the word "targeting" cannot be converted into a present-tense statement of guarantee. Plaintiff is reduced to qualifying its assertion ("Defendant *effectively* guaranteed the current level of dividend;" Id. at 23), but the fact remains that the word "target" cannot be stretched as far as Plaintiff needs to take it outside the safe harbor provisions. This is not the level of specificity nor the level of plausibility required to survive a motion to dismiss.

The Funding Statements are forward-looking as well. Plaintiff argues that Defendant's use of the phrase "able to access" meant that "Teekay was presently able to access the necessary financing" (Id. at 21) as if Defendant had the money sitting in an account somewhere, but "able

to access" can only be legitimately understood as a future-oriented concept; i.e., "the money will be available at the point in the future when we decide to ask for it."

Plaintiff's argument that Defendant's statements lack "meaningful cautionary language" does not fare any better. It contends that the risk factors listed by Defendant in its statements[2] are so generic as to be "worthless," but the information provided by Teekay as a cautionary note – that an "inability to secure financing" as a result of "conditions in the United States capital markets" or the failure of the boards of the daughter companies to approve cash distribution increases could prevent Teekay from increasing the dividend – is exactly what happened and does not, in retrospect, seem "generic" at all.

The Court finds that Defendant's statements regarding future dividends and access to funding were forward-looking, accompanied by meaningful cautionary language, and thus entitled to protection under the safe harbor provisions of the PSLRA.

Inadequate pleading of scienter

"[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2)(A). Scienter may be established through misleading statements made "with actual intent or deliberate recklessness." No. 84

---

[2] "[F]uture capital expenditure requirements and the inability to secure financing for such requirements; the amount of future distributions by the Company's daughter companies to the Company; … failure of the respective Board of Directors of the general partners of [TOO] and [TGP} to approve future cash distribution increases;… [and] conditions in the United States' capital markets." Knowles Decl., Ex. H at 2.

Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 932 (9th Cir. 2003).

Plaintiff makes three arguments in regards to the adequacy of its pleading of scienter, none of which are persuasive. It again asserts the "temporal proximity" of the November 2015 and December 2015 announcements (without an "intervening catastrophic event") as creating a strong inference of scienter; recent Ninth Circuit law is *contra* and the drastic dip in share price of the subsidiary companies in that intervening month constitutes the sort of dramatic event which can render proximity in time even less compelling as evidence of scienter.

The "core operations doctrine" can also be utilized to create an inference of scienter. The doctrine holds that, where the nature of a relevant fact is so "prominent" within a company that it would be "absurd to suggest" that the company's management was unaware of it at the time, a strong inference of scienter arises. *See* Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 987-88 (9th Cir. 2008). Plaintiff asserts the "core operations doctrine" in support of its position, but fails to specify exactly *what* the "relevant fact" is that it would be absurd to suggest that Teekay's management was unaware of. The Court presumes it concerns Plaintiff's contention that Defendant *knew* (or should have known) that it did not have the financing it claimed and would have to finance the growth projects through TGP-TOO revenues, but Plaintiff has not adequately alleged that fact such that reliance on it is proper in this context.

There is Ninth Circuit case law to the effect that "[p]roof under this [core operations] theory is not easy," requiring either specific admissions by executives of involvement in the smallest details of the company's operations or accounts by witnesses of the creation of false statements or reports. *See* Police Retirement Sys. v. Intuitive Surgical, 759 F.3d 1051, 1062 (9th

Cir. 2014). This requirement exists even when using the Berson "absurd to suggest" test. Id. at 1063. Plaintiff alleges nothing in this regard.

Another factor which can be used to create the "strong inference" of scienter is motive. But Plaintiff's allegation regarding what Defendant's motive might be is weak at best. Plaintiff's amended complaint alleges that Defendant was motivated by a desire to "distinguish [itself] in the eyes of its investors" and avoid a further decline in its share price. (¶ 142.) But these are general to any business operation and alleging that a party engaged in fraud to promote "routine business objectives" has been held insufficient to create the "strong inference" required. *See* Lipton v. PathoGenesis Corp., 284 F.3d 1027, 1038 (9th Cir. 2002)("[V]irtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.").

What is wanted is some element of concrete and personal benefit to individual defendants, not one that benefits the entire corporate entity. Plaintiff argues that it is not required to plead insider trading, but the fact is that there is no allegation of such activity in the complaint and its absence is noteworthy. Plaintiff's allegations simply do not represent the particularized facts reflecting the level of individual benefit sufficient to create a motive from which scienter can be strongly inferred.

Control-person liability

The Court having found that Plaintiff has not adequately plead facts which establish its claims of securities fraud under § 10(b) or Rule 10b-5, it is axiomatic that control-person liability cannot be adequately plead as regards the individual defendants in this matter.

**Conclusion**

Plaintiff has failed to adequately plead the falsity of the statements it alleges as elements of its securities fraud claim, and has further failed to adequately plead facts which create a strong inference of scienter on the part of Defendant. Nor has Plaintiff plead sufficient facts to rebut the assertion that the alleged misstatements by Defendant are forward-looking statements protected under the PSLRA's safe harbor provisions. Having failed to satisfactorily meet the pleading requirements as regards the defendant organization, it follows that the individual, control-person liability claims are likewise subject to dismissal.

The only question remaining is whether the dismissal should be with or without prejudice; i.e., whether it would be futile to permit Plaintiff to amend. At oral argument on this motion, Plaintiff's counsel conceded that Plaintiff's amended complaint contains all the allegations it could marshal in support of its claims and that, were the Court to find them insufficient, there was no point in permitting an opportunity to further amend. With that understanding, the Court will grant the 12(b)(6) motion and dismiss Plaintiff's amended complaint with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated: November 7, 2017.

Marsha J. Pechman
United States District Judge